ROBERT S. HUMPHREY *vs*. NATIONAL SEMICONDUCTOR CORP.
(and a companion case[1]).

Essex.   January 6, 1984. — May 18, 1984.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Libel and Slander. Practice, Civil,* Summary judgment.

An employee of a company enjoyed a qualified privilege to make disparaging
   comments about the performance of an employee of another company
   with which the first company had a business relationship, in so far as
   the comments were relevant to that relationship. [133-134]
Summary judgment for the defendant was properly ordered in each of two
   libel actions, where the plaintiff's affidavit merely asserted, in effect,
   that certain allegedly defamatory statements were mistaken, and provided
   no facts from which might be inferred any ulterior purpose which could
   remove the statements from the protection of the qualified privilege
   arising from the business relationship between the defendants and the
   plaintiff's employer, to whom the statements had been made. [135-136]

TORT. Writs in the Superior Court dated February 17, 1972,
and March 9, 1973, respectively.

The actions were heard by *Brady*, J., on motions for sum-
mary judgment.

*William G. Evans* for the plaintiff.
*Philip D. O'Neill, Jr.,* for the defendants.

KASS, J. Such is the antiquity of these libel cases that the
initial pleadings predate the effective date of the Massachusetts
Rules of Civil Procedure.[2] Humphrey was a salesman for New
England Technical Sales (NETS) which, in turn, acted as a
manufacturer's representative for the New England area of the
defendant National Semiconductor Corp. (National). The de-

---

[1] Robert S. Humphrey *vs*. Robert W. Green.

[2] A declaration was filed in the case against National Semiconductor
Corp. on May 1, 1972; in the case against Robert W. Green, on June 4,
1973. The litigation then moved at a leisurely pace. Judgments entered in
both cases on November 23, 1982, eight days after the defendants filed
motions for summary judgment.

famatory material about which Humphrey complains appeared in a letter dated July 20, 1971, which the defendant Green wrote to the president of NETS. Green was the northeast regional sales manager of National. The subject of Green's letter was "some major sources of disatisfaction [*sic*] in our current business approach to New England." First on Green's list was that, "There is a strong feeling of disatisfaction [*sic*] with three of your employees, principally [*sic*], Shawn [____], Bob Humphrey and Bill [____]. I feel that these people do not meet the requirements of professional and dedicated salesmen as set forth by National Semiconductor."

1. *The Nature of the Privilege.*

Translated, Green's letter may, with some imagination, be read as an assertion by him that Humphrey was a wretched salesman.[3] Even if defamatory, however, a statement is protected by the maker's qualified privilege if the publisher of the statement and the person who receives the statement have a common interest in the subject and the statement furthers that interest. *Christopher* v. *Akin,* 214 Mass. 332, 334 (1913). *Bander* v. *Metropolitan Life Ins. Co.,* 313 Mass. 337, 343 (1943). *Sheehan* v. *Tobin,* 326 Mass. 185, 190-192 (1950). *Ezekiel* v. *Jones Motor Co.,* 374 Mass. 382, 385-386 (1978). Restatement (Second) of Torts § 594 (1977) ("An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest"). For elaboration of the basic principle, see *id.* §§ 595 and 596. See also Prosser, Law of Torts § 115, at 789 (4th ed. 1971).

We have no difficulty in deciding that an employee of a company enjoys a qualified privilege to make disparaging comments about the performance of an employee of another company with which the first has a business relationship in so far as the comments are relevant to that relationship. Indeed, such

---

[3] See *Sharratt* v. *Housing Innovations, Inc.,* 365 Mass. 141, 145 (1974).

a case may be a particularly obvious example of the common interest qualified privilege. Green and his employer, National, had a common interest with NETS (Humphrey's employer) in maximizing National's sales in the region in which NETS represented National. National and NETS had a common interest in the quality of the sales representation. If National thought that representation deficient, NETS had a lively interest in hearing about it because National was a valued principal. The burden is upon the defendants to show facts which create the qualified privilege. *Bander* v. *Metropolitan Life Ins. Co.,* 313 Mass. at 343. They have done so by affidavits, by the master's reports,[4] and by depositions of Green and of the plaintiff Humphrey, all of which were before the judge in the summary judgment proceedings (of which more will be said later in this opinion) and were not contravened by any material offered by the plaintiff. See *Vaught Constr. Corp.* v. *Bertonazzi Buick Co.,* 371 Mass. 553, 558-561 (1976).

2. *Abuse of the Privilege.*

Once the defendants established their qualified privilege, the burden shifted back to the plaintiff to prove that the privilege had been abused. *Retailers Commercial Agency, Inc., petitioner,* 342 Mass. 515, 520 (1961). *Ezekiel* v. *Jones Motor Co.,* 374 Mass. at 390. Contrast *Robert L. Sullivan, D.D.S., P.C.* v. *Birmingham,* 11 Mass. App. Ct. 359, 365-366 (1981), illustrating an absolute privilege. An abuse of a qualified or conditional privilege may occur if the person who disseminates the allegedly defamatory material acts for a purpose other than protecting the interest for the protection of which the privilege is given, i.e., for some ulterior purpose. *Ezekiel* v. *Jones Motor Co., supra* at 390. Restatement (Second) of Torts §§ 604 and 605. Compare *Retailers Commercial Agency, Inc., petitioner, supra* at 520. The plaintiff, in his brief, suggests that kind of abuse of the privilege, namely that National's hidden purpose

---

[4] Although the cases against National and Green were consolidated, the master filed separate reports in each. It is not clear whether the final reports or the draft reports were placed in support of the defendants' motions for summary judgment, but the parties have not pointed to significant textual differences between the draft and the final reports.

was to remove NETS as a sales representative to the Honeywell Corporation, an important customer, and that National complained about the plaintiff to set the stage for that action. As will appear in the next portion of this opinion, however, none of the material put before the court on the summary judgment motion supports the ulterior motive hypothesis.

3. *Basis for Summary Judgment.*

By the time the defendants moved for summary judgment, the Massachusetts Rules of Civil Procedure were in effect. As we have previously noted, the defendants mustered affidavits, depositions and master's reports in support of their motion[5] for summary judgment. We have reviewed that material, as well as a counter affidavit filed by the plaintiff. The latter dwells on details offered by Green for his dissatisfaction with the plaintiff. These involved sales tactics with particular customers and failure to attain sales quotas. The counter affidavit says no more than that Green was wrong headed about resisting a change in the packaging of a product which NETS was selling for National; that Green inspired one of the sales gambits he criticized; and that there were no established sales quotas by which to judge the plaintiff's performance. None of the plaintiff's assertions in his counter affidavit speaks to facts suggesting a hidden or improper purpose on Green's or National's part. At bottom the affidavit says no more than that Green's criticism of the plaintiff was mistaken. The affidavit fails to state facts from which an ulterior purpose in the defendants' complaints about the plaintiff could be inferred. ". . . [A] party against whom summary judgment is sought is [not] entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *National Assn. of Govt. Employees, Inc.* v. *Central Bdcst. Corp.,* 379 Mass. 220, 231 (1979), quoting from *Hahn* v. *Sargent,* 523 F.2d 461, 468 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).

---

[5] By the time of the summary judgment proceedings, the case against National and the case against Green had been consolidated.

Unsupported allegations will not suffice to defeat a well pleaded motion for summary judgment. *Gannett* v. *Lowell*, 16 Mass. App. Ct. 325, 327 (1983).

*Judgments affirmed.*