Nancy LANDRY, Plaintiff,

v.

Roy MIER, Irene Martel, Constance Cze-
chowski, Robert Stawiecki, Edward Hanc,
and the Town of Webster, Defendants.

Civil Action No. 93–40163–NMG.

United States District Court,
D. Massachusetts.

April 11, 1996.

Robert J. Hennigan, Jr., Power & Hennigan, Worcester, MA, for Nancy E. Landry.

Patrick Hamilton, Office of the United States Attorneys, Boston, MA, James H. O'Brien, Brody, Hardoon, Perkins & Kesten, Boston, MA, John J. Davis, Elizabeth M. Fahey, Joseph L. Bierwirth, Morrison, Mahoney & Miller, Boston, MA, for Roy Mier, Irene Martel, Constance Czechowski, Robert Stawiecki.

Keith B. Muntyan, Carol M. Merchasin, Morgan, Brown & Joy, Boston, MA, Patrick Hamilton, Office of United States Attorneys, Boston, MA, John J. Davis, Morrison, Mahoney & Miller, Boston, MA, for Edward Hanc, Town of Webster.

### MEMORANDUM AND ORDER

GORTON, District Judge.

On September 2, 1993, plaintiff, Nancy Landry ("Landry") filed a two-count Complaint in the above-entitled matter. In

Count I, brought against the Town of Webster and the members of the Town's Board of Selectmen (both in their individual and official capacities), plaintiff claims, pursuant to 42 U.S.C. § 1983, a violation of her rights secured by the Fourteenth Amendment to the United States Constitution.[1] In Count II of her Complaint, Landry asserts a libel claim against one of the selectmen, Roy Mier ("Mier").

On August 30, 1995, United States Magistrate Judge Swartwood issued a Report and Recommendation ("R & R") on two summary judgment motions filed by the defendants. In the R & R, Judge Swartwood recommended that 1) the motion for summary judgment by defendants Mier, Irene Martel, Constance Czechowski, Robert Stawiecki and the Town of Webster [Docket # 22] be allowed in part and denied in part, and 2) the motion for summary judgment by defendant, Edward Hanc [Docket # 23] be allowed in part and denied in part. Both parties have filed objections to the R & R.

On November 7, 1995, defendant Roy Mier filed a motion for summary judgment on plaintiff's libel claim against him in his individual capacity [Docket # 43]. Plaintiff has filed no Opposition to that motion. For the reasons that follow, 1) the Report and Recommendation issued by the Magistrate Judge will be accepted and adopted, and 2) defendant Mier's motion for summary judgment on plaintiff's libel claim will be allowed.

## I. *The Summary Judgment Standard*

Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the plaintiffs and indulge all reasonable inferences in their favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

With respect to a motion for summary judgment, the burden is on the moving party

to show that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). If the movant satisfies that burden, it shifts to the non-moving party to establish the existence of a genuine material issue. *Id.* In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e). With those principles in mind, this Court turns to defendants' motions for summary judgment.

## II. *The Civil Rights Claims*

### A. *Factual Background*

In the R & R, Magistrate Judge Swartwood made the following relevant factual findings, stated in a light most favorable to the plaintiff, the non-moving party:

1. On or about August 24, 1990, the Town of Webster ("the Town") issued a job description for the position of secretary to the Board of Selectmen ("the Board") which in part provided that work was to be assigned by the Board and that the secretary was to work under the Board's general direction. The job description contained no reference as to what entity appointed the secretary or the term of appointment.

2. By letter dated November 7, 1990, the Webster Town Administrator advised Landry that the Board was offering her the position of secretary and that they would formally appoint her to that position at their November 13, 1990, meeting. That letter, too, contained no mention of the term of her appointment.

---

1. Count I of plaintiff's Complaint also asserts a claim under the Massachusetts Civil Rights Act ("the MCRA"), M.G.L. c. 12, § 11I. In her Opposition papers, however, plaintiff acknowledges

that she has failed to state a claim under the MCRA and, accordingly, summary judgment in favor of all defendants on that claim will be ALLOWED.

3. At its November 13, 1990, meeting, the Board voted unanimously to appoint Landry as the Board's secretary. There was no mention in that vote of the term of the appointment. In December, 1990, Landry commenced her employment as secretary.

4. At no time prior to her employment by the Board was Landry informed that her appointment was for a fixed, annual term.

5. On several occasions between May 28, 1991 and November 18, 1991, the Board's agenda included an item for evaluating Landry's performance, but no definitive action was taken with respect to that matter.

6. After the May, 1992, town elections, the Board was comprised of the following persons, all of whom are named as defendants: Roy Mier ("Mier"), Irene Martel ("Martel"), Constance Czechowski ("Czechowski"), Robert Stawiecki ("Stawiecki") and Edward Hanc ("Hanc").

7. After the Board's reorganization meeting on May 7, 1992, Selectman Stawiecki spoke privately with Landry and informed her that the consensus of the Board was that she should resign. Landry refused to do so.

8. For the June 16, 1992 meeting, the Board's agenda included an item which read:

7:30—Selectmen's Appointments (Cont'd 6–1–92)

—Executive Secretary, Board of Selectmen

9. At the end of the June 16 meeting, the Board voted to go into executive session to discuss the appointment of its secretary. Landry was present during the Board's executive session when Selectman Hanc moved for her reappointment. No action was taken on that motion after no one seconded the motion. Landry left the executive session and the Board decided to place her on probation until September 8, 1992 and to address her status at that time.

10. The Board's agenda for its August 31, 1992 meeting contained the following item:

Regular Session

—Selectmen's Appointments

—Interim Town Administrator

—Secretary to the Board of Selectmen

Landry knew that the Board intended not to reappoint her at its August 31, 1992 meeting. Prior to that meeting, Landry was presented with a draft severance agreement which she refused to accept.

11. At the August 31, 1992 Board meeting, Selectman Hanc again moved for Landry's reappointment as secretary, which motion failed for lack of a second. A motion was then made, seconded and passed not to reappoint Landry as the Board's secretary.

12. At no time prior to Ms. Landry's termination on August 31, 1992 did she inform any members of the Board that it was her understanding that the termination of her position required notice and a hearing.

13. Webster's General By-laws, adopted in March 1969 and as amended through October 1, 1990 ("the By–Laws"), provide in Section 60.13 that "[t]he Board of Selectmen shall appoint a Staff to the Board of Selectmen." Section 320 of the By–Laws further provides that the Board:

> shall have the sole authority to establish and maintain a written personnel policy, rules, regulations, employment terms and conditions and other items that they deem necessary to manage the personnel affairs of the Town of Webster (excluding schools). The Town Administrator shall have the authority to manage and execute the aforementioned policies and procedures, and other regulatory measures established for the management or supervision of all personnel and personnel matters.

*Id.*

14. In 1987, the Town adopted a new Town Charter ("the Charter") which was in effect at the time that Landry was not reappointed. Section 7–8 of the Charter provides that:

> Any appointed officer, member of a multiple member body or employee of the town, not subject to the provisions of the state civil service law, or covered by terms of a collective bargaining agreement, whether appointed for a fixed or an indefinite term, may be suspended or removed from office by the appointing authority for good cause.

Section 7–8 further provides that the appointing authority, when removing any such officer or employee of the town, shall provide to that person written notice of the intent to remove, a statement of the causes for removal, a public hearing, and final action by the appointing authority. The final paragraph of Section 7–8 states that:

Nothing in this section shall be construed as granting a right to such a hearing when a person who has been *appointed for a fixed term* is not reappointed when his original term expires.

*Id.* (emphasis added).

15. Mildred T. Kusek served as secretary to the Board from 1963 until August, 1990, when she was replaced by Landry. Both before and after the adoption of the Charter, Ms. Kusek was reappointed annually to her position as secretary at a meeting following the local town elections. The person who served as secretary to the Board prior to Ms. Kusek also was reappointed annually.

In Count I of her Complaint, Landry alleges that the defendants violated her Fourteenth Amendment right to procedural due process by terminating her employment without providing her with written notice, a hearing, and a written decision, as required by the Town Charter. Landry has sued the Board members in both their individual and official capacities. The individual defendants maintain that summary judgment with respect to all claims against them in their individual capacities is warranted because they are entitled to qualified immunity. The Town of Webster, in turn, seeks summary judgment on the ground that Landry has failed to state a cause of action against it pursuant to § 1983. Those arguments are considered below.

**B.   *Qualified Immunity***

**1.   *Background***

As the First Circuit Court of Appeals has observed, when confronted with a claim of immunity in a motion for summary judgment, the relevant question to consider is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." *Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 91 (1st Cir. 1994) (quoting *McBride v. Taylor,* 924 F.2d 386, 389 (1st Cir.1991)). Moreover, because qualified immunity affords "an immunity from suit rather than a mere defense to liability," see *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985), the Supreme Court has stressed the importance of resolving questions of immunity at the earliest possible stage in litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991).

■   Two issues must, therefore, be considered: 1) whether at the time of the alleged conduct there was a "clearly established" constitutional right that was violated, and 2) whether a reasonable person would have known that his conduct violated that constitutional right. *Frazier v. Bailey,* 957 F.2d 920, 929 (1st Cir.1992).

■   With respect to the first inquiry, the plaintiff bears the burden of demonstrating the existence of a clearly established right. *See Quintero de Quintero v. Aponte–Roque,* 974 F.2d 226, 228 (1st Cir.1992). Whether a constitutional right is clearly established is a question of law for the Court. *Id.* A right is not "clearly established" unless, at the time the challenged conduct occurred,

the contours of the right were sufficiently plain that a reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular constitutional right.

*Martinez v. Colon,* 54 F.3d 980, 988 (1st Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 423 (1995); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("[t]he contours of the right must be sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right").

■   The second inquiry, in turn, considers whether a reasonable person would have known that his conduct violated that constitu-

tional right. *Bailey,* 957 F.2d at 929. The test at this stage is one of objective legal reasonableness. *See Anderson,* 483 U.S. at 639, 641, 107 S.Ct. at 3038, 3039; *Lallemand v. Univ. of Rhode Island,* 9 F.3d 214, 215 (1st Cir.1993) (qualified immunity "is available if the [defendant's] action was objectively reasonable even if later found to be mistaken"). The operative inquiry here is not whether the defendants actually abridged a plaintiff's constitutional rights, for the mere fact that a violation occurred is not enough to defeat qualified immunity unless it is further demonstrated that the defendants' conduct was unreasonable. *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984); *Quintero de Quintero,* 974 F.2d at 228.

### 2. *Application of the Doctrine*

■ This Court agrees with Magistrate Judge Swartwood's conclusion that the individual defendants are entitled to invoke the protection afforded by the qualified immunity doctrine and that, therefore, summary judgment should enter in their favor on all civil rights claims against them in their individual capacities. In reaching that conclusion, the Magistrate Judge focused on the question of "whether it was sufficiently clear that a reasonable member of Webster's Board of Selectmen would have understood that his or her actions violated [plaintiff's] constitutional rights." [2]

Plaintiff maintains that, regardless of the Board's past practice, reasonable members of that body would have realized that she was not a fixed-term employee and therefore entitled to the procedural due process set forth in the Charter. For three reasons, this Court disagrees. First, none of the written documentation concerning plaintiff's employment dealt with the issue of whether or not she was a "fixed-term" employee. Second, the Town By–Laws and Charter provide that the Board shall appoint its own staff and have the sole authority to set employment terms for its employees. Finally, for over

twenty-three years (both before and after the adoption of the new Charter in 1987), the Board appointed and/or reappointed its secretary annually. Based upon the foregoing factors, this Court adopts the conclusion of the R & R that a reasonable selectman would have assumed that Landry was a fixed-term employee.

### 3. *Plaintiff's Objection*

In her objection to the R & R, plaintiff argues that, by the time of the August 31, 1992 meeting, the Board of Selectmen was aware that termination of her position required notice and a hearing. Landry Objection at 1. In support of her argument, Landry relies upon deposition testimony of defendant Mier in which he said that prior to the August 31, 1992 meeting it was not clear to him whether Landry was an employee entitled to the due process removal procedures under the Charter or a "fixed term" employee subject to annual reappointment. Mier Deposition at 91. When asked whether he raised that issue during the August 31, 1992 meeting, Mier responded negatively, for "[he] had already raised it [with the other selectmen and that] ... [n]obody seemed interested in it." *Id.*

On the basis of Mier's deposition testimony, Landry argues that there was no need for her to "inform" members of the Board about the requirements of notice and a hearing because Mier had "already raised the issue of removal versus reappointment." Landry concludes that:

> [o]nce the defendants were put on Notice of Landry's right to a hearing, regardless of by who, if they fail to act in accordance with the plaintiff's Constitutional Right to such a hearing, they do so at their own individual peril and not in their official capacity.

Landry Objection at 2.

Even when Mier's deposition testimony is read in a light most favorable to the plaintiff,

---

**2.** Before reaching that question, one must consider whether Landry's constitutional rights were, in fact, violated. Clearly, where the Town Charter provides that an employee, other than a fixed-term employee who is not reappointed at

the expiration of his or her term, may be removed from office for "good cause," that employee has a protected property interest in continued employment. *See Cronin v. Town of Amesbury,* 895 F.Supp. 375, 383 (D.Mass.1995).

however, it does not demonstrate that the selectmen were aware that Landry was absolutely entitled to the procedural safeguards. To the contrary, the testimony demonstrates the *uncertainty* of the selectmen in the weeks leading up to the August 31 meeting. Indeed, elsewhere in his deposition Mier indicates that, as of August 31, 1992, he understood that Landry had not been "removed" from her position but rather that she simply had not been reappointed. Mier Deposition at 90. If, prior to the August 31 meeting Mier and the other selectmen had received definitive word that plaintiff was not a "fixed-term" employee, Mier could not have entered that meeting with the opinion he held.

In sum, this Court agrees with the conclusion set forth in the R & R that the individual defendants are entitled to qualified immunity. Accordingly, the R & R, in this regard, is accepted and adopted and the individual defendants' motion for summary judgment on all claims against them in their individual capacities for the alleged civil rights violations will be ALLOWED.

### C. *Town Liability Under 42 U.S.C. § 1983* [3]

#### 1. *Legal Principles*

■ In *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), the Supreme Court determined that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. The *Monell* Court explained that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.... A municipality cannot be held liable solely because it employs a tortfeasor...." *Id.* at 691, 98 S.Ct. at 2036. Therefore, "to support liability under § 1983, a municipal custom must have been the 'moving force' behind the plaintiff's injury." *Bordanaro v. McLeod,* 871 F.2d 1151, 1157 (1st Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989); *Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996) ("[m]unicipal liability inures

only when the execution of a local government's policy or custom causes the injury").

■ Although the term "policy" frequently refers to "formal rules and understandings," its meaning is not limited to "fixed plans of actions to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–1300, 89 L.Ed.2d 452 (1986). Rather, a municipality may be held liable for:

> course[s] of action tailored to a specific situation and not intended to control decisions in later situations, [provided that] the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers.

*Id.* at 481, 106 S.Ct. at 1299 (quoted in *Gonzalez v. Ysleta Indep. School Dist.,* 996 F.2d 745, 753 (5th Cir.1993)). In *Pembaur,* for example, the Supreme Court observed that "[n]o one has ever doubted ... that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body." 475 U.S. at 480, 106 S.Ct. at 1298; *see also Hill v. City of Pontotoc,* 993 F.2d 422 (5th Cir.1993) (board of alderman fired fire chief without due process).

#### 2. *Application of the Doctrine*

■ In the R & R, Magistrate Judge Swartwood rejected the Town's argument that plaintiff failed to allege facts sufficient to establish that the Board was acting pursuant to an official custom or policy when it allegedly violated her constitutional rights. The Report states that:

> [i]f Ms. Landry can establish that she was not a "fixed-term" employee (and therefore was entitled to notice, hearing and a decision), then she may attempt to establish that the Board's policy or custom of treating its secretary as a fixed-term employee who is not entitled to the procedural protections afforded by [the Town Charter] violated her constitutional rights.

R & R at 13–14. The Report concluded that because there is a material issue of fact

---

**3.** This section of the Memorandum and Order addresses the civil rights claims against both the Board members in their official capacities and

the Town itself because the two are functionally identical.

concerning that issue, summary judgment in favor of the Town should be denied.

Although the Town "specifically dispute[s] that there is a genuine issue of fact as to whether or not [Landry] was a fixed-term employee" (see Town Opposition to Magistrate Judge's R & R at 1), it fails to direct this Court's attention to evidence supporting that assertion. Because there is a genuine issue of material fact, this Court concludes that summary adjudication is inappropriate. Accordingly, the R & R in this regard is accepted and adopted and the Town's motion for summary judgment with respect to plaintiff's civil rights claim against it will be DENIED.

### III. *Plaintiff's Libel Claim Against Defendant Mier*

In November, 1995, defendant Mier filed a motion for summary judgment with respect to Count II, which asserts a claim against him in his individual capacity for common law defamation. No opposition to Mier's motion has been received.

### A. *Factual Background*

The facts supporting Landry's defamation claim against Mier involve statements made at the October 5, 1992 meeting of the Board. Prior to that date, and particularly during his election campaign in May, 1992, Mier was told by several Town citizens that the Board's secretary was not responsive to the needs of the citizens. Mier Deposition at 12–14. As a Board member, Mier continued to receive complaints about Landry's job performance, including claims that she was not answering the phone and not at the office during normal business hours. Mier also spoke with the editor of a local paper, who informed him that plaintiff was uncooperative. Id. at 27–45. Other Board members, too, received similar complaints. Stawiecki Deposition at 25–32; Martel Deposition at 47–48, 79–91.

Soon after the August 31, 1992, Board meeting (at which the motion not to reappoint Landry was passed), each Board member received a letter from plaintiff's counsel. Those letters set forth plaintiff's contention that the Board's action violated the Town

Charter and plaintiff's due process rights and threatened legal action to redress those rights.

At the October 5, 1992, Board meeting, the selectmen addressed the charges made in the letters from plaintiff's counsel. Mr. Mier expressed his opinion on whether Landry should be given a hearing:

> if ever a case was justified for not rehiring [Landry], this is certainly one of them. I think this Board has had numerous complaints of her rude and obnoxious behavior. I think she has not followed directions on many occasions. Her note taking and her minutes that she submitted were often incomprehensible. She's failed to comply with the Board wishes. I noticed [a fellow Board member's] motion on one occasion to have [Landry] not use the answering machine, and her continual absences from the office during regular business hours.
>
> And I think if [plaintiff's counsel] really wants to pursue this at a hearing, that it would be an obvious conclusion that the non-rehiring or whatever you want to call it was certainly justified.

Transcript of Town of Webster Board of Selectmen Hearing at 13–14.

### B. *Conditional Privilege*

■ Assuming, *arguendo*, that the statements made by Mier at the meeting were defamatory, defendant advances two principal arguments: 1) as a government official commenting on a matter of public concern, he is protected by a conditional privilege from liability, and 2) plaintiff is unable to prove that Mier spoke with knowledge that his statements were false or with reckless disregard for the truth, and Mier is therefore entitled to a constitutional privilege. Because this Court agrees that defendant is entitled to the protection afforded by a conditional privilege, there is no need to address Mier's latter argument.

The Supreme Judicial Court has determined that statements made by public officials while performing their official duties are conditionally privileged. *Mulgrew v. Taunton,* 410 Mass. 631, 635, 574 N.E.2d 389 (1991); *Vigoda v. Barton,* 348 Mass. 478,

483–85, 204 N.E.2d 441 (1965). The purpose of a conditional privilege is to permit public officials to speak freely on matters of public importance, because "[t]he threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important issues." *Mulgrew*, 410 Mass. at 635, 574 N.E.2d 389. In *Vigoda*, the Court noted that government officials "are entitled to be free, and beyond that the public interest requires that they be free, to engage in action which may have its genesis in honest error." 348 Mass. at 485, 204 N.E.2d 441.

In the case at bar, this Court concludes that the statements made by Mier at the October 5, 1992 Board meeting are conditionally privileged. Residents of the Town of Webster have an interest in ensuring that the Board of Selectmen's office effectively serves them, and the Board is obliged to respond to possible lawsuits in a manner that best promotes the Town's interests. Noting that the Board members need to engage in debate to reach a consensus and make sound decisions, Mier persuasively argues that his comments were made:

> to advise the Board about a possible course of action to respond to [Landry's] allegations—namely, to hold a hearing at which, he believed, the correctness of the Board's decision would become apparent. To convey his belief, he offered some examples of the plaintiff's behavior for his fellow Board members' consideration. As such, he acted as a government official communicating to other elected officials about a matter of public concern.

Mier Memorandum at 7.

When a defendant establishes that his statement is conditionally privileged, a plaintiff may not prevail unless she establishes that the defendant abused that privilege. *Humphrey v. National Semiconductor Corp.*, 18 Mass.App.Ct. 132, 134, 463 N.E.2d 1197 (1984). The common law privilege may be abused either by 1) unnecessary, unreasonable or excessive publication of the defamatory matter, or 2) publishing the defamatory material with "actual malice." *Catrone v. Thoroughbred Racing Associations*, 929

F.2d 881, 889 (1st Cir.1991); *Humphrey*, 18 Mass.App.Ct. at 134, 463 N.E.2d 1197 (abuse of a conditional privilege may occur if the defendant disseminates the material "for some ulterior purpose"). The plaintiff bears the burden of establishing abuse of the conditional privilege by "clear and convincing" evidence. *See Catrone*, 929 F.2d at 889.

Conclusory allegations by a plaintiff as to a defendant's lack of good faith will not suffice to avert summary judgment, rather, she must proffer evidence "from which an ulterior purpose in [Mier's statements] about the plaintiff could be inferred." *Humphrey*, 18 Mass.App.Ct. at 135, 463 N.E.2d 1197. In the instant case, plaintiff proffers no evidence that defendant abused the conditional privilege by acting out of any motive other than, as Mier argues, 1) a desire to make the Town government more efficient and responsive to citizens' needs, and 2) to present fellow Board Members with a possible course of action in response to plaintiff's threat of litigation against the Town. Mier Memorandum at 8.

Moreover, mere incidental evidence of ill will between Landry and Mier does not suffice to demonstrate abuse of the conditional privilege. In *Catrone*, the United States Court of Appeals for the First Circuit observed that "ill will, without more, is insufficient" to establish "actual malice." 929 F.2d at 890; *Boston Mutual Life Ins. Co. v. Varone*, 303 F.2d 155, 159 (1st Cir.1962) (noting that, in the context of conditional privilege, "actual malice" entails "an intent to do an act which ... lies outside the purpose of the privilege"). Indeed, the Court in *Catrone* noted that if the "*motivating* force for the publication is shown not to be ill will, its existence is immaterial. Incidental gratification of personal feelings is irrelevant." 929 F.2d at 880 (emphasis in original).

This Court concludes, therefore, that 1) the statements made by Mier at the October 5, 1992 Board meeting were conditionally privileged, and 2) Mier did not abuse that privilege. Accordingly, defendant Mier's motion for summary judgment with respect to Count II of plaintiff's Complaint will be ALLOWED.

## ORDER

For the foregoing reasons:

1) The Report and Recommendation issued by the Magistrate Judge is **ACCEPTED AND ADOPTED;** and

2) Defendant Mier's Motion for Summary Judgment with respect to Count II of plaintiff's Complaint is **ALLOWED.**

So ordered.