JOHN P. HARRINGTON *vs.* WILLIAM M. COSTELLO & another.[1]

Norfolk. December 2, 2013. - April 9, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Libel and Slander. Limitations, Statute of.*

This court concluded that a cause of action for defamation accrues when the plaintiff discovers or with reasonable diligence should have discovered that he or she has suffered harm, the harm was caused by the conduct of another, and the defendant is the person who caused that harm. [724-727]

In a defamation action, a Superior Court judge did not err in concluding that the plaintiff's claims were barred by the three-year statute of limitations, where, although the plaintiff did not know that his claims were viable in a legal sense until a date within the limitations period, he undisputably knew, more than three years before the action commenced, that the defamatory accusation was published, that he was harmed by the publication, and that the defendants were the publishers [727-731]; and where, despite any lies and misrepresentations by the defendants that concealed from the plaintiff an appreciation of their malicious motivation in publishing the defamatory accusation, they did not conceal the facts giving rise to the claims themselves such that the statute of limitations would be tolled under G. L. c. 260, § 12 [731-733].

CIVIL ACTION commenced in the Superior Court Department on November 1, 2010.

A motion to dismiss was heard by *Renée P. Dupuis*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Frank L. McNamara, Jr.*, for the plaintiff.

*Ross A. Kimball* for the defendants.

BOTSFORD, J. This is a defamation action, before us on further appellate review. The plaintiff, John P. Harrington, and the two defendants, William M. Costello and John A. Perry, are Roman Catholic priests. Harrington claims that the defendants published, in the parish where Harrington was serving, a false and defamatory statement to the effect that a parishioner had accused Har-

[1]John A. Perry.

rington of stalking her minor son, and that Harrington suffered substantial personal harm as a result. A judge in the Superior Court granted the defendants' motion to dismiss the complaint on statute of limitations grounds. A divided panel of the Appeals Court affirmed. *Harrington* v. *Costello*, 82 Mass. App. Ct. 812 (2012).

Harrington argues that under proper application of the so-called discovery rule, the statute of limitations is tolled until the plaintiff knows the identity of the defendant. He claims that here, although he knew that Costello and Perry had published the defamatory[2] stalking accusation in 2005, he reasonably could believe they were privileged or entitled to do so; and that he did not know that they were the proper defendants until he discovered, in November of 2007 (within the limitations period), that Costello, with Perry's knowledge, had fabricated completely the defamatory stalking accusation. We agree with Harrington that under the discovery rule, knowledge of the identity of the defendant is necessary for a cause of action to accrue — in addition to knowledge of the harm for which recovery is sought and of the cause of that harm. In the case of defamation, however, the harm for which recovery is sought, at its core, is the publication of the defamatory material, and therefore it is knowledge of the publisher's identity that is required; whether the publisher can claim a qualified or conditional privilege to publish is a separate matter. Because Harrington's complaint alleges he knew in 2005 that the defendants were the publishers of the defamatory stalking accusation that caused him harm, we conclude that his complaint was not timely filed. Accordingly, we affirm the judgment dismissing the complaint.

1. *Background.* a. *Facts.* We summarize the facts alleged in Harrington's complaint, accepting them as true. *Golchin* v. *Liberty Mut. Ins. Co.*, 460 Mass. 222, 223 (2011), *S.C.*, 466 Mass. 156 (2013), quoting *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 45 (2004). The parties are all ordained

---

[2]Although a statement must be both false and defamatory to be actionable, see Restatement (Second) of Torts § 558(a) (1977), for ease of reference in this opinion, we will use only the word "defamatory." At this point in the case, we accept as true Harrington's allegations that the statement at issue was both false and defamatory.

priests in the Roman Catholic Church. In January of 2005, Harrington was serving as a priest at St. Patrick's Church (St. Patrick's) in Falmouth, in the Diocese of Fall River. Perry was the pastor at St. Patrick's and was Harrington's superior; Perry also served as the vicar general of the diocese. Costello was the pastor of St. Anthony's Catholic Church (St. Anthony's) in East Falmouth. At some point in January, Costello telephoned Perry and told him that a parishioner of St. Patrick's (parishioner) had accused Harrington of stalking her minor son, a high school student, and wanted to transfer her son from the religious education program at St. Patrick's to the counterpart program at St. Anthony's. In response to Costello's call, Perry spoke to the two directors of religious education at St. Patrick's, learned that the parishioner's son indeed had withdrawn from the religious education program, and then told the two directors, "[T]hat is the young man whose mother has accused Father Harrington of stalking."

Thereafter, Perry contacted Harrington and informed him of the stalking accusation conveyed by Costello. The accusation of stalking was false, as Harrington explained to Perry; he urged Perry to speak to the parishioner directly. Perry did so, and then spoke again to Harrington, telling him that the parishioner said that she had never told Costello that Harrington was stalking her son. What the parishioner in fact said to Perry, however, was that she had spoken with a coworker, Michael LeBrun, about "her son's situation," not Costello, but that she had never informed LeBrun or anyone else that Harrington was stalking her son. Perry thus withheld from Harrington everything the parishioner told him other than that she had not personally conveyed the stalking accusation to Costello.

Harrington then spoke to Costello, who informed Harrington that he, Costello, had been mistaken: it had not been the parishioner who told him of the stalking accusation, but instead had been a coworker of that parishioner, a man who was a member of St. Anthony's congregation and a friend of Costello's. Although Harrington asked Costello for the name of the coworker, Costello refused to provide it, as did Perry when Harrington later asked him for the name — although Perry made it clear he knew the name.

Following the publication of the stalking accusation, Harrington was subjected to harassment and ridicule in the St. Patrick's community. In May of 2005, Harrington met with Perry and Bishop George Coleman of the Fall River Diocese. Bishop Coleman made it clear that Harrington was not going to learn the identity of the coworker who, according to Costello and Perry, was the source of the statement about the parishioner's stalking accusation; the bishop instead indicated that Harrington should drop the matter. Thereafter, the bishop suspended Harrington from living in diocesan housing, an action creating the potential for Harrington to be stigmatized as a priest accused of sexual abuse.

On November 6, 2007, Harrington finally learned of LeBrun's identity.[3] That same day, Harrington met and spoke with LeBrun, who stated that he had never accused Harrington of stalking the parishioner's son.[4] Harrington became aware at that point that Costello had fabricated completely the stalking accusation, and that Bishop Coleman, Perry, and Costello had "engaged in a 'conspiracy of silence' to prevent Harrington from discovering the true source of the allegations, namely Costello." In April, 2009, Perry confirmed that LeBrun was, in fact, the person whose identity was kept from Harrington.

b. *Procedural history.* On November 1, 2010, Harrington filed his complaint against Perry and Costello in the Superior Court. Thereafter, the defendants moved to dismiss the complaint on statute of limitations grounds, arguing that the applicable three-year limitations period, see G. L. c. 260, § 4, barred Harrington's suit. A Superior Court judge granted the motion, concluding that the discovery rule did not toll the statute of limitations, because all the facts giving rise to the cause of action for defamation against the defendants were known to Harrington in 2005, five years before the complaint was filed. The judge also ruled that G. L. c. 260, § 12,[5] did not toll the limita-

---

[3]The complaint does not indicate how Harrington learned of this information.

[4]It is not clear from the complaint whether Harrington alleges that LeBrun said he had never accused Harrington of stalking the parishioner's son, or that LeBrun said he had never stated that the parishioner had accused Harrington of stalking her son.

[5]General Laws c. 260, § 12, provides:

"If a person liable to a personal action fraudulently conceals the

tions period, because the defendants had not concealed the facts giving rise to a cause of action for defamation, and Harrington was aware of all of those facts in 2005.

In his appeal to the Appeals Court, the plaintiff argued for the first time that the statute of limitations was tolled until November 6, 2007, because Harrington reasonably could have believed until then that the defendants were permitted or privileged to repeat the defamatory statement about the accusation of stalking a minor to each other and to the religious education directors. The majority of the Appeals Court rejected the claim, agreeing with the motion judge that the statute of limitations had run. *Harrington* v. *Costello*, 82 Mass. App. Ct. at 815-816. The dissenting justice agreed with Harrington. *Id.* at 817-821 (Trainor, J., dissenting). We granted Harrington's application for further appellate review.

2. *Discussion.* a. *Standard of review.* We review the allowance of a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011), and cases cited. To survive a motion to dismiss, the factual allegations must plausibly suggest that the plaintiff is entitled to relief; they must "raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008), quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007).[6]

b. *Statute of limitations and discovery rule.* Under G. L.

---

cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

[6]The defendants' motion to dismiss included attachments of letters and other documents that were not attached to or referenced in Harrington's complaint, and the defendants' brief filed in this court included references to additional facts that not only were not in or raised by the complaint, but were described without any apparent source in the record at all. We infer that the defendants' motive for presenting these materials was to paint the plaintiff in as negative a light as possible in an effort to influence the view taken of the case by judges who might be hearing it. The attachment of these materials to the motion to dismiss was inappropriate, and the reference on appeal to other

c. 260, § 4, an action for defamation must be "commenced only within three years next after the cause of action accrues." The definition of accrual for the purposes of G. L. c. 260, § 4, has been left to judicial interpretation. See, e.g., *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991), quoting *Franklin* v. *Albert*, 381 Mass. 611, 617 (1980). In defamation cases, "the general rule is that the cause of action accrues, and the statute of limitations begins to run, on publication of the defamatory statement." *Flynn* v. *Associated Press*, 401 Mass. 776, 780 (1988). A statement is published when it is communicated to a third party. *White* v. *Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004). Because he filed his complaint more than three years after publication of the alleged defamatory statement that he was accused of stalking a minor, Harrington has the burden of establishing facts that take him outside the statutory three-year limitations period. See, e.g., *Riley, supra* at 243-244, citing *Franklin, supra* at 619.

As indicated, Harrington argues that his action was timely because the discovery rule prevents accrual of a tort cause of action, including one for defamation, until a plaintiff knows, or with reasonable diligence should know, the identity of the defendant who caused his harm, and that Harrington did not know that Costello and Perry were responsible for causing his harm until he learned that they had made up the stalking accusation. We agree with Harrington's first point but not his second.

i. *Knowledge of the defendant's identity.* Under the discovery rule, where a plaintiff has suffered an "inherently unknowable" wrong, for accrual to occur, a plaintiff must have knowledge or sufficient notice of two related facts: (1) that he was harmed; and (2) that his harm was caused by the defendant's conduct. See *Flynn*, 401 Mass. at 781, quoting *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 129 (1982) (cause of action does not "accrue until the plaintiff learns, or reasonably should have learned, that he has been harmed by the defendant's conduct"). See generally *Doe* v. *Creighton*, 439 Mass. 281, 283 (2003) (three-

---

facts not contained in the record was improper. See Mass. R. A. P. 16 (e), as amended, 378 Mass. 940 (1979) ("No statement of a fact of the case shall be made in any part of the brief without an appropriate or accurate record reference"). The motion judge did not appear to consider the defendants' attachments, and although the Appeals Court did do so, we do not.

year limitations period in tort action does not begin to run until "a plaintiff has[,] first, an awareness of her injuries and, second, an awareness that the defendant caused her injuries"); *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 205-206 (1990); *Szymanski* v. *Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002). Our cases considering this second condition — that the injury was caused by the defendant — have concerned solely its causation aspect. That is, we have considered at what point a plaintiff, who knew both the identity of the defendant and the conduct or actions for which the defendant was responsible, knew or should have known that the defendant's actions caused the harm the plaintiff suffered.[7] We have not been called on to consider when a plaintiff, who knew that a particular action or conduct caused him harm, knew or should have known that the defendant was the person responsible for that injury-causing action.[8]

Courts in a number of other States faced with this question have concluded that for a cause of action to accrue, the identity of the defendant must be known or reasonably knowable. See, e.g., *Tarnowsky* v. *Socci*, 271 Conn. 284, 288-291, 297 (2004); *Adams* v. *Oregon State Police*, 289 Or. 233, 239 (1980); *Robinson* v. *Morrow*, 99 P.3d 341, 345 (Utah Ct. App. 2004); *Spitler* v. *Dean*, 148 Wis. 2d 630, 637-638 (1989).[9] These courts have

---

[7]See, e.g., *Koe* v. *Mercer*, 450 Mass. 97, 101-105 (2007) (considering whether plaintiff became aware or reasonably should have become aware of causal connection between defendant's sexual abuse and plaintiff's emotional problems); *Doe* v. *Creighton*, 439 Mass. 281, 283-286 (2003) (same); *Riley* v. *Presnell*, 409 Mass. 239, 244-247 (1991) (disputed material fact existed whether plaintiff's realization of causal connection between psychotherapist's malpractice and plaintiff's emotional issues occurred within limitations period; summary judgment in favor of defendant reversed).

[8]In *Collins* v. *Nuzzo*, 244 F.3d 246, 252-253 (1st Cir. 2001), a defamation case, the issue of the identity of the defendant was squarely raised. The plaintiff there learned of the allegedly defamatory statements in 1992, but did not have information confirming the identity of the person responsible for making the statements until 1997. *Id.* at 249-250. The United States Court of Appeals for the First Circuit noted that Massachusetts courts had not decided how the discovery rule operates where a plaintiff is unable to identify the author of the allegedly defamatory statements and stated, "[W]e think it better to let the Massachusetts courts decide this issue." *Id.* at 253.

[9]But see, e.g., *Guebard* v. *Jabaay*, 65 Ill. App. 3d 255, 258-259 (1978); *Nowotny* v. *L & B Contract Indus., Inc.*, 933 P.2d 452, 457-458 (Wyo. 1997) (declining to extend discovery rule to delay accrual until identity of tortfeasor is known or reasonably knowable). But see also *Teater* v. *State*, 252 Neb. 20, 26 (1997).

noted that the equitable reason for delaying accrual until a plaintiff knows or reasonably should know that the harm he suffered may have been caused by another person's tortious conduct applies with equal force where the plaintiff is, and has reason to be, unaware of the identity of the tortfeasor. See *Tarnowsky, supra* at 291; *Robinson, supra*; *Spitler, supra* at 636. We agree. Knowledge of the responsible person's identity seems implicit in the requirement that a plaintiff know that the defendant's conduct caused him harm; without such knowledge, the plaintiff does not know whom to sue. Accordingly, a more precise way to state the discovery rule is the following: a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who caused that harm.[10]

ii. *Application of discovery rule to this case.* As mentioned, claiming that the discovery rule — reformulated to include knowledge of the defendant's identity as a factor — operates to toll the statute of limitations in this case, Harrington contends that his cause of action did not accrue until he discovered LeBrun and learned for the first time of Costello's (and derivatively Perry's) true role in constructing the defamatory stalking statement "entirely out of whole cloth." The argument is that until then, Harrington reasonably could believe that the defendants were conditionally privileged[11] in their publication of the

---

[10]We thus agree with Harrington that the discovery rule applies generally to defamation cases. Our holding in *Flynn* v. *Associated Press*, 401 Mass. 776 (1988), is not to the contrary. We concluded in *Flynn* that "[t]he discovery rule does not apply to public libel printed in a newspaper widely available to the public, including the plaintiff." *Id.* at 781. As noted by the dissent in the Appeals Court, many courts do not apply any form of the discovery rule to written statements that are broadly disseminated, as in the case of a newspaper or magazine with a wide circulation. *Harrington* v. *Costello*, 82 Mass. App. Ct. 812, 820 n.4 (2012) (Trainor, J., dissenting). The language we used in *Flynn* was specific; we did not reject application of the discovery rule wholesale to defamation claims. See *Flynn, supra* at 781-782. Moreover, in the case of a widely available newspaper or the like, the identity of the author and publisher of the allegedly defamatory statement generally would be obvious. See *id.* Cf. *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 130 (1982) (in holding plaintiff's cause of action for negligent construction barred under applicable statute of limitations, court noted identities of building's designer and builder were matters of public record).

[11]Although Harrington failed to raise his conditional privilege argument

defamatory statement because, as pastors, they had a duty to protect their parishioners from harm while engaged in church activities, and this responsibility permitted or even obligated them to speak about the accusation to others, like the religious education program directors, who shared the same interest and duty.[12] Advancing an alternative but related point, Harrington also claims that until he made the connection to LeBrun, he reasonably believed that the defendants published the defamatory statement about the stalking accusation without the requisite degree of fault.[13,14] In other words, until he learned LeBrun's name and spoke to him, Harrington did not know Perry and Costello were "defendants" because of their conditional privilege or lack of fault.[15] Although the claim certainly has appeal in a

before the Superior Court, he did raise it before the Appeals Court. "All issues briefed and argued before the Appeals Court are before this court on grant of an application for further appellate review, unless the order granting the application prescribes otherwise." *Commonwealth* v. *Souza*, 390 Mass. 813, 815 n.1 (1984). Accord *Bradford* v. *Baystate Med. Ctr.*, 415 Mass. 202, 204 (1993). We assume for argument that the complaint sufficiently alleges facts that support Harrington's conditional privilege claim.

[12]See *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 513 n.8 (1984) (Massachusetts has recognized mutual interest conditional privilege); J.R. Nolan & L.J. Sartorio, Tort Law § 7.13, at 221 (3d ed. 2005) (conditional privilege exists if publisher and recipient share common interest, and communication is "reasonably calculated to protect and to further such common interest"). See also *Sheehan* v. *Tobin*, 326 Mass. 185, 190-191 (1950) (applying mutual interest conditional privilege to defendant reporting meeting minutes to board).

[13]See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 858 (1975) (plaintiff must prove at least negligent publication for claim of defamation of private person).

[14]Harrington also claims that accrual was delayed because he reasonably believed that Costello's and Perry's statements were protected opinions under the First Amendment to the United States Constitution until he learned of LeBrun's identity. This claim lacks merit. Learning LeBrun's identity would not affect whether the statements themselves were opinions rather than factual assertions. See *Aldoupolis* v. *Globe Newspaper Co.*, 398 Mass. 731, 733-734 (1986).

[15]"To prevail on a claim of defamation, a plaintiff must establish that the defendant was at fault for the publication of a false statement regarding the plaintiff, capable of damaging the plaintiff's reputation in the community, which either caused economic loss or is actionable without proof of economic loss" (footnote omitted). *White* v. *Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004). See Restatement (Second) of Torts, *supra* at § 558 ("To create liability for defamation there must be: (a) a false and defamatory

case where, as alleged here, the defendants lied to Harrington in an effort to cover up their nefarious actions to oust him from the Fall River Diocese, nonetheless, as a defamation action, it cannot succeed.

In January, 2005, Harrington was aware that Costello had related to Perry that a parishioner had accused Harrington of stalking a minor boy — in other words, that Costello had published to Perry a defamatory stalking accusation concerning Harrington. Likewise, Harrington knew at that time that Perry republished the defamatory stalking accusation concerning him to the two religious education directors. Harrington thus had knowledge in early 2005 of the fact of publication and of the defendants' identities as the publishers of a defamatory statement about him; and he also knew by sometime in 2005 that he had been harmed as a result of the publication, that is, harmed by at least the harassment and ridicule he suffered in the St. Patrick's community soon after the accusation was published.[16] Although, according to Harrington, he did not know until November of 2007 that a claim of defamation against the defendants was viable in a legal sense, accrual under the discovery rule is not delayed until a plaintiff learns that he was *legally* harmed. See *Doe* v. *Harbor Schs., Inc.*, 446 Mass. 245, 255 (2006) ("We reject [the plaintiff's] contention that her fiduciary claim does not accrue until she first understood that she had been legally harmed, i.e., that she could sue [the defendant] for her injuries"); *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 647 (1984) ("The unknown factor . . . must be what the facts are, not the legal theory for the cause of action"). See also *Fidler* v. *Eastman Kodak Co.*, 714 F.2d 192, 199 (1st

statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication"). See also *id.* at § 558 comment c (making clear that existence of privilege is defense to liability for defamation; plaintiff not responsible for proving lack of privilege as element of tort).

[16]Even taking reasonable inferences in Harrington's favor, it is unclear from the complaint that his removal from diocesan housing was connected to the publication of the defamatory stalking allegation. But assuming that the removal was so linked, it appears to have occurred more than three years before Harrington's complaint was filed.

Cir. 1983) ("The statute does not begin to run until the plaintiff knows he has been injured as a result of conduct of [the] defendants. . . . But knowledge that he has been injured by *negligent* conduct is something more and different" [quotation and citation omitted]).

"Statutes of limitations provide the temporal finality necessary for the orderly conduct of human affairs." *Doe* v. *Harbor Schs., Inc.*, 446 Mass. at 256. Accord *Franklin*, 381 Mass. at 618, quoting *Wood* v. *Carpenter*, 101 U.S. 135, 139 (1879) (statutes of limitations "promote repose by giving security and stability to human affairs"). In promoting this finality, statutes of limitations "represent society's considered, although often far from perfect, compromise between a plaintiff's need to remediate wrongs and society's need for closure and forward movement." *Doe* v. *Harbor Schs., Inc.*, *supra*. If accrual were not to occur until a plaintiff, who knows (or reasonably should know) that an identified defendant has acted in a way that caused the plaintiff harm, gathers sufficient facts to overcome a legal defense or claim that appears to prevent the claim against that defendant from being legally actionable or viable, accrual arguably could be delayed for years, rendering alleged tortfeasors "perpetual defendants-in-waiting."[17] *Id.*

We appreciate that the parties here are Roman Catholic priests;

[17]The problem of defendants waiting in perpetuity is further highlighted by Harrington's conditional privilege argument. For a claim of defamation, a conditional privilege is an affirmative defense; the burden rests on the defendant to prove that his defamatory statements were otherwise privileged. See *Humphrey* v. *National Semiconductor Corp.*, 18 Mass. App. Ct. 132, 133-134 (1984), citing *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337, 343 (1943). Once a defendant proves that the statements were covered by a conditional privilege, the burden shifts back to the plaintiff to prove that the privilege was abused. *Humphrey* v. *National Semiconductor Corp.*, *supra* at 134. Thus, Harrington's argument would delay accrual until a defendant knows facts that are unnecessary to plead a defamation claim in the first instance and that are meant to prepare for an eventuality that may not come to pass — that is, if the defendant does not raise the conditional privilege defense.

As discussed previously, Harrington also suggests that apart from conditional privilege, until he learned LeBrun's identity and spoke to LeBrun, he reasonably could have believed that Costello was not negligent in publishing the defamatory stalking allegation to Perry and Perry was not negligent in republishing it to the directors of the religious education program in which the parishioner's son was enrolled. As discussed *supra*, our cases indicate generally that a plaintiff's cause of action for negligence is not tolled until the

that the Roman Catholic church is hierarchical in organization, see *Wheeler* v. *Roman Catholic Archdiocese of Boston*, 378 Mass. 58, 60, cert. denied, 444 U.S. 899 (1979); and that at least Perry and Bishop Coleman were Harrington's direct superiors. But a claim for defamation seeks to recover for harm caused by publication of defamatory material, see *HipSaver, Inc.* v. *Kiel*, 464 Mass. 517, 522 (2013), citing *White* v. *Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. at 66, and there is no dispute that Harrington was aware of Costello's and Perry's identities as the publishers of the defamatory stalking accusation in 2005. Because Harrington undisputedly knew that the defamatory stalking accusation statement was published; that he was harmed by the publication; and that the defendants were the publishers more than three years before November 10, 2010, the discovery rule does not protect his complaint from dismissal on statute of limitations grounds.

c. *Statute of limitations and G. L. c. 260, § 12.* Harrington argues that even if the discovery rule itself did not toll the statute of limitations in this case, the statute was tolled pursuant to G. L. c. 260, § 12.[18] This statute provides that "[i]f a person liable to a personal action fraudulently conceals the cause of

plaintiff learns that the defendant's conduct was *negligent* — what matters are the *facts* of which the plaintiff was aware. See, e.g., *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 207-208 (1990), and cases cited. But even assuming a different rule with respect to a defamation claim and that Harrington did not actually know the defendants were at least negligent in publishing the defamatory stalking allegation, Harrington still had a duty of reasonable inquiry. Cf. *id.* at 210 (fact that plaintiff did not believe her cancer was caused by defendant's drug within limitations period "does not aid her because we test the accrual of her cause of action by what a reasonable person in her position would have known *or on inquiry would have discovered at the various relevant times*" [emphasis added]); *Friedman* v. *Jablonski*, 371 Mass. 482, 486 (1976) (as of time of sale, plaintiff buyers bringing action for deceit in connection with sale of real estate could have taken steps to discover misrepresentations concerning right of way and therefore cause of action occurred at that time). Here, Perry informed Harrington that the parishioner (whom Perry identified by name) had not conveyed to Costello any accusation that Harrington was stalking her son. Harrington could have followed up on that information by speaking to the parishioner herself and, among other information, could have learned from her the identity of her coworker, LeBrun.

[18]Whether the statute of limitations is tolled under G. L. c. 260, § 12, is a separate inquiry from the application of the discovery rule. See *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 328 (2001) (summarizing ways under which statute of limitations can be tolled).

such action from the knowledge of the person entitled to bring it," the period before the plaintiff becomes aware of his cause of action is excluded for purposes of the statute of limitations. See note 5, *supra*. Harrington argues that in deliberately withholding LeBrun's identity from him, Costello and Perry engaged in positive acts to fraudulently conceal his cause of action against them. See *Friedman* v. *Jablonski*, 371 Mass. 482, 485 n.3 (1976). See also *Crocker* v. *Townsend Oil Co.*, 464 Mass. 1, 8-9 (2012); *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 108 (1980), citing *Stetson* v. *French*, 321 Mass. 195, 198 (1947) ("In the absence of a fiduciary duty of full disclosure, the period of limitations [is] not tolled under G. L. c. 260, § 12, unless the defendant concealed the existence of a cause of action through some affirmative act done with intent to deceive").[19]

We agree with Harrington that, as alleged in the complaint, the defendants took steps to deceive him. According to his complaint, despite never having been told by LeBrun (or anyone else) that a parishioner had accused Harrington of stalking her son, Costello published the accusation and told Harrington that a third party provided him with the information. Furthermore, despite receiving information from the parishioner that she did not tell *anyone* that Harrington was stalking her son, Perry only informed Harrington that the parishioner did not tell Costello. At best, while these acts concealed from Harrington an appreciation of the defendant's malicious motivation in publishing the defamatory stalking allegation about him, they did not conceal the publication or identity of the publishers, i.e., the facts giving rise to the defamation claim itself. See *Crocker*, 464 Mass. at 9-10 (in action challenging plaintiffs' classification as independent contractors rather than employees, even if it were assumed defendant employer knew plaintiffs might misunderstand their employment status, defendant did not conceal requisite facts from which plaintiffs might determine their employment status; statute of limitations not tolled under G. L. c. 260, § 12). See also *Stetson* v. *French*, 321 Mass. at 198, and cases cited

---

[19]Harrington appears to confine his argument concerning the application of G. L. c. 260, § 12, to a claim that the defendants engaged in actual fraud. Therefore, we do not reach the question whether a fiduciary duty existed between Harrington and the defendants.

("cause of action is not concealed from one who has knowledge of the facts that create it"). Contrast *Manufacturers' Nat'l Bank* v. *Perry*, 144 Mass. 313, 314 (1887) (defendant, through agent, actively concealed fact of plaintiff bank's overpayment on check). Harrington had knowledge of the facts giving rise to his defamation cause of action as of 2005. Therefore, despite the defendants' alleged lies and misrepresentations about the source of the original stalking accusation, the statute of limitations was not tolled under G. L. c. 260, § 12.

*Judgment affirmed.*