VUONO, J.
*1231 *693 The plaintiff, AA & D Masonry, LLC (AA & D), appeals from a judgment dismissing its complaint on statute of limitations grounds. As will be discussed in more detail below, *694 this is the latest in a series of actions brought by AA & D to obtain payment for masonry work it performed in 2009, in connection with the construction of an office park (the project) on property owned by the defendant, South Street Business Park, LLC (South Street). The first case resulted in default judgments against South Street and the project's contractor, Crowsnest Corporation (Crowsnest). The present complaint was filed on October 30, 2015, and asserts claims against South Street, its principal, David A. Franchi, and members of David's family including Olga L. Franchi (mother), Domenic Franchi (father), John S. Franchi (brother), and Lisa M. Carroll (sister).[2] AA & D claims that each of the individual defendants had sufficient involvement and ownership interest in South Street to be held liable for South Street's breach of contract and the default judgment under the theory of piercing the corporate veil. For the reasons that follow, we conclude that the complaint was properly dismissed.
Background. We summarize the facts alleged in AA & D's complaint and describe the history of prior related litigation in order to provide context for our discussion of the issues.[3] On or about January 6, 2009, AA & D entered into a written contract with Crowsnest for the benefit of South Street to furnish masonry labor and materials to the project.[4] The contract sum was $409,452. The complaint alleges that AA & D was induced to enter the contract by South Street and Crowsnest through representations of the project manager that AA & D would be paid in installments from the proceeds of a construction loan from Wells Fargo Bank, N.A. (Wells Fargo), which was secured by a mortgage on the property.[5]
AA & D completed its work in June of 2009, but it was not paid as promised. This led AA & D to file a mechanic's lien under G. L. c. 254, § 4. AA & D recorded a notice of the *695 contract and a statement of account in the Middlesex South District registry of deeds on June 29, 2009, and August 26, 2009, respectively. By that time, as AA & D subsequently learned, South Street had granted a mortgage to Olga in the amount of $4,750,000.[6] The mortgage was secured by the property and *1232 recorded at the same Registry on March 12, 2009. A discharge of that mortgage was recorded shortly thereafter, on March 25, 2009.
On August 27, 2009, AA & D commenced an action to enforce its mechanic's lien against Crowsnest, South Street, and Wells Fargo as a party in interest. Neither Crowsnest nor South Street filed a response to the complaint.[7] On April 21, 2010, AA & D obtained separate default judgments against South Street and Crowsnest, in the amount of $409,452 plus interest (the South Street judgment).[8] No portion of the South Street judgment has been paid to AA & D.
More than three years later, on or about January 11, 2013, AA & D filed a new lawsuit against Crowsnest, David, and Olga, alleging that David, a principal of Crowsnest, and Olga, a de facto principal, were jointly and severally liable with Crowsnest for contempt for nonpayment of the South Street judgment. The complaint further alleged claims of fraudulent misrepresentation, breach of the covenant of good faith and fair dealing, unjust enrichment, conversion, and violation of G. L. c. 93A (the 2013 case).
Olga moved to dismiss the complaint in the 2013 case under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). In its opposition to Olga's motion, filed on March 4, 2013, AA & D asserted that (1) "[t]he public records of this court and Middlesex South [r]egistry *696 of [d]eeds indicate a pattern by David Franchi to defraud his creditors through his corporate entities. In some instances this appears to have been accomplished with the assistance of his mother, Olga Franchi"; (2) "[a] search of David Franchi's name through the Trial Court Information Center reveals dozens of suits were filed in Middlesex Superior Court by creditors and contractors against him and the corporate entities in which he was a principal"; (3) in addition to its suit, AA & D had discovered at least three other suits filed against Crowsnest and South Street by subcontractors alleging nonpayment for work on the project; and (4) AA & D had recently discovered, from records relating to an action on the mortgage filed in Superior Court by Wells Fargo against South Street and David, that David and South Street had defaulted on the construction loan in April of 2009. AA & D pointed specifically to the $4,750,000 mortgage to Olga, as recorded in the Middlesex South District registry of deeds (and a copy of which was attached to AA & D's opposition), as evidence of collusion and fraud because it showed that Olga was involved in diverting funds from the Wells Fargo loan. AA & D argued that the timing of South Street's April 1, 2009, default on the Wells Fargo loan "is curious because it comes immediately after South Street granted Olga Franchi a mortgage in the amount of $4,750,000 and discharged the same in less than thirty days." *1233 Ultimately, Olga's motion to dismiss the complaint was allowed. AA & D appealed, and the judgment of dismissal as to Olga was affirmed in an unpublished memorandum and order issued pursuant to our rule 1:28. See AA & D Masonry, LLC v. Franchi, 87 Mass. App. Ct. 1136, 33 N.E.3d 1269 (2015). No final judgment appears to have entered with respect to David and Crowsnest.[9]
As indicated, AA & D brought this Superior Court action on October 30, 2015. The allegations in the current complaint mirror those asserted in the 2013 case (albeit with more particularity) and are primarily as follows: (1) South Street fraudulently diverted loan proceeds from Wells Fargo to other entities owned and controlled by the individual defendants; (2) the defendants confused and intermingled the assets of South Street and their other entities while failing to observe corporate formalities; (3) on February 25, 2009, South Street fraudulently granted Olga a *697 mortgage in the amount of $4,750,000; (4) South Street defaulted multiple times on the Wells Fargo loan and concealed that fact from AA & D; (5) David and Crowsnest also concealed from AA & D that they had been sued by another contractor in connection with the project; and (6) the individual defendants are de facto principals, owners, and alter egos of South Street and, as such, they controlled and managed South Street directly or through David as their agent. AA & D's complaint seeks relief for contempt of the South Street judgment (count I), fraud in the inducement (count II), conversion (count III), unjust enrichment (count IV), and violations of G. L. c. 93A (count V). It also seeks, in count VI, to pierce the corporate veil to hold the individual defendants liable for South Street's conduct as stated in counts II through V.
The defendants filed motions to dismiss AA & D's complaint on the ground, among others, that counts II through VI are barred by the applicable statutes of limitations, the longest of which is six years. They maintained that AA & D was harmed in 2009, when it was not paid from the proceeds of the Wells Fargo loan as promised. AA & D did not dispute that the applicable statutes of limitations had expired unless tolling applied.[10] Rather, it argued that it was entitled to tolling of the limitations periods under the discovery rule and the fraudulent concealment statute, G. L. c. 260, § 12, because it could not reasonably have discovered the identity of those responsible for its injury until 2013, when it obtained documents related to the Wells Fargo loan.[11]
AA & D did not argue in its oppositions, as it argues now, that count VI included an *1234 action on an unsatisfied judgment and was subject to a twenty-year period of limitations. See *698 G. L. c. 235, § 19.[12] The motion judge therefore did not address that issue. After judgment entered, AA & D filed a motion to reconsider in which it raised this claim for the first time. No action appears to have been taken on the motion for reconsideration, nor was it the subject of a notice of appeal. We decline to address the issue. See Commissioner of Rev. v. Comcast Corp., 453 Mass. 293, 312-313, 901 N.E.2d 1185 (2009) (new legal theory presented for the first time in motion for reconsideration is waived).
The motion judge concluded that AA & D's claims are time-barred because no tolling applies, and dismissed the complaint pursuant to Mass.R.Civ.P. 12(b)(6). On appeal, AA & D does not challenge the dismissal of count one. For substantially the reasons articulated by the judge, we conclude that the statutes of limitations on AA & D's remaining claims were not tolled. We therefore affirm the judgment of dismissal.
Discussion. "We review the allowance of a motion to dismiss de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Harrington v. Costello, 467 Mass. 720, 724, 7 N.E.3d 449 (2014). "To survive a motion to dismiss, the facts contained in the complaint, and the reasonable inferences drawn therefrom, must " 'plausibly suggest[ ]" ... an entitlement to relief.' " Flagg v. AliMed, Inc., 466 Mass. 23, 26-27, 992 N.E.2d 354 (2013), quoting from Iannacchino v. Ford Motor Co., 451 Mass. 623, 636, 888 N.E.2d 879 (2008).
1. The discovery rule. The Supreme Judicial Court has adopted "a discovery rule for the purpose of determining when a cause of action accrues, and thus when the statute of limitations starts to run." Bowen v. Eli Lilly & Co., 408 Mass. 204, 205, 557 N.E.2d 739 (1990). The rule provides "that a cause of action accrues for purposes of the statute of limitations on the happening of an event likely to put the plaintiff on notice of facts giving rise to the cause of action." Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 520, 677 N.E.2d 159 (1997). "Under the discovery rule, the limitation period accrues when the plaintiff has 'sufficient notice of two related facts: (1) that [it] was harmed; and (2) that [the] harm was caused by the defendant's conduct.' "
*699 Commonwealth v. Tradition (N. Am.) Inc., 91 Mass. App. Ct. 63, 71, 71 N.E.3d 142 (2017), quoting from Harrington v. Costello, supra at 725, 7" url="https://cite.case.law/citations/?q=7%20N.E.3d%20449">7 N.E.3d 449. The knowledge required to trigger commencement of the statute of limitations " 'is not notice of every fact which must eventually be proved in support of the claim,' but rather 'knowledge that an injury has occurred.' " Pagliuca v. Boston, 35 Mass. App. Ct. 820, 824, 626 N.E.2d 625 (1994), quoting from White v. Peabody Constr. Co., 386 Mass. 121, 130, 434 N.E.2d 1015 (1982).
"A plaintiff may be put on 'inquiry notice' [that a cause of action has accrued] where it is informed of facts that would suggest to a reasonably prudent person in the same position that an injury has been suffered as a result of the defendant's conduct." Commonwealth v. Tradition (N. Am.) Inc., supra. See Felton v. Labor Relations Commn., 33 Mass. App. Ct. 926, 928, 598 N.E.2d 687 (1992) ;
*1235 Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 371, 778 N.E.2d 16 (2002). "[T]he factual inquiry focuses on which was the first event reasonably likely to put the plaintiff on notice that the defendant's conduct had caused him injury." Ibid.
As previously noted, AA & D asserts that its causes of action against the individual defendants did not accrue until March or April of 2014. According to AA & D, it could not with reasonable diligence have discovered that the defendants were responsible for its injury before reviewing various documents that were obtained while conducting discovery in connection with the 2013 case. Those documents allegedly show that (1) David is not the sole owner of South Street, (2) John and Lisa (together with David) were coguarantors of the Wells Fargo loan, (3) South Street maintained a working capital account at Middlesex Savings Bank and loan proceeds were deposited into that account and then almost immediately transferred to other bank accounts in the name of other entities the defendants owned and controlled, and (4) a notice of default on behalf of Wells Fargo to South Street dated August 20, 2008, specified that the basis for the claim of default was the failure of the borrower to utilize loan proceeds exclusively for the development project as required by the loan documents. (See note 11, supra.)
The problem with AA & D's argument is that we test the accrual of a cause of action by what a reasonable person in the plaintiff's position would have known "or on inquiry would have discovered at the various relevant times." Bowen v. Eli Lilly & Co., supra at 210, 557 N.E.2d 739. We believe that a reasonably prudent plaintiff in AA & D's position, upon not being paid any of the over $400,000 due after six months of contracted labor, would have made inquiries *700 to determine how the Wells Fargo construction loan proceeds had been spent. See Friedman v. Jablonski, 371 Mass. 482, 486, 358 N.E.2d 994 (1976) (as of time of sale, plaintiff buyers bringing action for deceit in connection with sale of real estate could have taken steps to discover misrepresentations and therefore cause of action accrued at that time).[13] It is clear that AA & D would have learned that other contractors had not been paid, that South Street had defaulted on the Wells Fargo loan both before and after contracting with AA & D, and that a "fraudulent" mortgage had been granted to Olga and discharged ten days later, had AA & D followed up on information that was available through the Trial Court Information Center or recorded in the Middlesex South District registry of deeds in 2009, as it apparently did before filing its opposition to the motion to dismiss in the 2013 case.[14] There are no allegations in the *1236 complaint that support the inference that AA & D was able to discover this information in 2013, but not in 2009. Indeed, all of the documents upon which AA & D currently relies to establish fraud and collusion were created in 2009 (see note 11, supra ), and could have been obtained by AA & D when it filed its complaint to enforce its mechanics lien. We therefore conclude that AA & D failed to exercise its duty of reasonable inquiry and, as a result, the discovery rule does not protect AA & D's complaint from dismissal on statute of limitations grounds. See Harrington v. Costello, 467 Mass. at 730 n.17, 7 N.E.3d 449.
2. General Laws c. 260, § 12. Equally unavailing is AA & D's contention that the statutes of limitations were tolled due to the *701 defendants' fraudulent concealment of material facts which prevented it from learning their individual identities and the extent of their involvement in diverting funds from the Wells Fargo loan.[15] See G. L. c. 260, § 12 (excluding for statute of limitations purposes the period before the plaintiff becomes aware of his cause of action "[i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it"). Even accepting for the purposes of this appeal AA & D's allegations that the defendants took actions to conceal their financial circumstances, those actions did not give rise to AA & D's injury. AA & D was injured in 2009, when it was not paid as promised from the proceeds of the Wells Fargo loan. AA & D immediately was aware of its injury and, as we have already discussed, it was or should have been aware of potentially fraudulent conduct when reasonable inquiry would have uncovered the $4,750,000 mortgage granted to Olga. Consequently, and despite the alleged collusion between the defendants, the statutes of limitations were not tolled under G. L. c. 260, § 12.[16]
Judgment affirmed.
RUBIN, J., dissenting in part.
The defendants' motions to dismiss the lawsuit of plaintiff AA & D Masonry, LLC (AA & D), were allowed on statutes of limitations grounds. AA & D now appeals. Because I believe the court majority misapprehends both the doctrine of "inquiry notice" and the significance of recording documents with the registry of deeds, I must respectfully dissent.
In ruling on a motion to dismiss, the allegations of the complaint, and all reasonable inferences favoring the plaintiff that may be drawn therefrom, must be taken as true. See Harrington v. Costello, 467 Mass. 720, 724, 7 N.E.3d 449 (2014). The complaint alleges *702 that the defendant South Street Business Park, LLC (South Street), and Crowsnest Corporation (Crowsnest), an entity owned by defendant David Franchi, were involved in a joint enterprise to develop commercially a parcel of real estate in Marlborough. In February, *1237 2008, South Street obtained a construction loan from Wells Fargo Bank in the original principal amount of $9,550,000 which funds were required to be used exclusively for the construction project in Marlborough. In January, 2009, AA & D entered into a written contract with Crowsnest for the benefit of South Street to furnish masonry labor and materials for the project for the sum of $409,452. The complaint alleges that AA & D was induced to enter the contract by South Street and Crowsnest through representations of the project manager that AA & D would be paid in installments from the proceeds of the Wells Fargo loan. And indeed the written agreement itself provided that payments would be made no later than ten days after receipt by Crowsnest of payment from South Street and/or Wells Fargo.
AA & D completed the work in June, 2009, but was not paid for it. AA & D subsequently filed a mechanic's lien, which, in August, 2009, it sought to enforce by filing a complaint in Superior Court against South Street and Crowsnest. A default judgment was entered in the principal sum of $409,452. South Street has not satisfied any portion of that judgment.
In its complaint AA & D alleges that, unbeknownst to it, South Street defaulted multiple times in its obligations to Wells Fargo under the loan, both prior to and after contracting with AA & D. AA & D alleges that South Street maintained a working capital account at Middlesex Savings Bank, and that loan proceeds were deposited into the account and then almost immediately transferred into other bank accounts in the name of other entities the defendants owned and controlled. During just the six-month time period from January of 2009 to June of 2009, approximately $1,406,000 of deposits into the Middlesex Savings Bank account were diverted to these other entities. And, indeed, a notice of default on behalf of Wells Fargo Bank to South Street dated August 20, 2008, specifies that the basis for the claim of default was the failure of the borrower to utilize loan proceeds exclusively for the development project as required by the loan documents.
Attached to the opposition to the motions to dismiss were, among other things, a repayment and completion guarantee *703 signed by three of the individual defendants, David Franchi, John Franchi, and Lisa Carroll. It guaranteed the $9,550,000 note to Wells Fargo Bank, and also guaranteed "the performance by [South Street] of all the terms and provisions of the Loan Agreement," implying the guarantors maintained a level of control over South Street. The complaint alleges that all the individual defendants were at all material times members or owners of South Street, as well as its alter egos, who controlled and managed South Street directly and/or through defendant David Franchi as their agent, and that they were all partners or principals in the joint venture to commercially develop the subject property.
Count I of the complaint was dismissed for failure to state a claim, and the plaintiff has not appealed that ruling. Count II alleges fraud in the inducement; count III conversion and misappropriation; count IV unjust enrichment; and count V violations of G. L. c. 93A. Count VI does not articulate a stand-alone cause of action. As the majority explains, it articulates a corporate veil-piercing theory of liability against the individual defendants with respect to counts II through V. Consequently, we are concerned only with the statutes of limitations with respect to those latter counts, which range from three to six years.[1] This case was brought more than six years *1238 after the failure of Crowsnest to pay AA & D's bill. The question therefore is when the causes of action accrued, starting the statute of limitations clock.
AA & D alleges that it could not have known of the relevant facts underlying these causes of action until the Wells Fargo loan documents and the Middlesex Savings Bank records were provided to it in discovery in a related action in March and April of 2014. Although I agree with the method of analysis employed by the court majority, I think it goes astray in concluding that AA & D's contention is wrong.
Under the discovery rule, "a cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that (1) he has suffered harm; (2) his harm was caused by the conduct of another; and (3) the defendant is the person who *704 caused that harm." Harrington v. Costello, 467 Mass. at 727, 7" url="https://cite.case.law/citations/?q=7%20N.E.3d%20449">7 N.E.3d 449. With respect to the defendants listed on the loan guarantee, I disagree with the court majority's conclusion that with reasonable diligence the plaintiff could have adduced the existence of its causes of action against them more than six, or even three, years prior to initiation of the suit.
The court majority concludes (a) that AA & D should have been aware of a mortgage to Olga Franchi for $4.75 million that was recorded in March of 2009, (b) that this mortgage should have put AA & D on "inquiry notice" that something fraudulent was happening with respect to the loan proceeds, and (c) that based on that notice AA & D should have discovered the documents that reveal the basis for its claims, documents indicating that there were three unknown guarantors of the Wells Fargo loan and that funds from the loan were siphoned to entities they controlled. See ante at ----, 107 N.E.3d at ----. Each of these conclusions warrants examination.
To begin with, the majority holds that AA & D should have been aware of the Olga Franchi mortgage simply because it was recorded. To be sure, AA & D had discovered the mortgage by 2013, and it may be that there is some reason peculiar to the plaintiff in this case why it "had no difficulty" in finding it, such that, as the majority holds, AA & D should have discovered it earlier. Ante at ---- n.14, 107 N.E.3d at 1235-36 n.14. But the majority relies on the simple fact that the mortgage was recorded in support of its conclusion that AA & D should have found it.
The only way to ensure one is aware of all recorded documents with respect to a piece of property is of course to undertake a comprehensive title search. I see no reason for an unpaid worker, supplier, contractor, or subcontractor who files and records a mechanic's lien with the registry of deeds, as AA & D did, to undertake such a search. Unlike a purchaser or mortgagee, who must in order to protect itself examine the title to a piece of property, one recording a mechanic's lien has no reason to engage in a comprehensive title search nor to undertake the expense involved in doing so.[2] I would not hold as the majority *1239 does that one who files a mechanic's lien is as a matter of law put "on *705 inquiry" by recorded documents that might have been found in a title search; I believe that doing so will impose unnecessary costs, and create unnecessary complications, for the "contractors, subcontractors, laborers, and suppliers" who routinely utilize such liens "to provide security ... for the value of their services and goods provided for improving the owner's real estate." Hammill-McCormick Assocs., Inc. v. New England Tel. & Tel. Co., 399 Mass. 541, 542-543, 505 N.E.2d 883 (1987).[3] Next, and perhaps more fundamental to this case, even had AA & D been aware of the mortgage, standing alone it presents no reason to suspect a diversion of loan funds to anyone. It is not a disbursement of funds, but an additional debt obligation. Borrowing additional funds cannot put one on notice as a matter of law that there is a problem with the way in which the proceeds of a previous mortgage are being utilized. And while the discharge of the mortgage so quickly might in some circumstances have raised suspicions, there is no reason to believe that AA & D knew, three to six years before the suit was filed, that the mortgage had been discharged,[4] nor is there any basis for a conclusion that someone in AA & D's position, who had *706 done work, not been paid, and filed and recorded a mechanic's lien, should have known of the discharge. Further, "inquiry notice" merely imposes an obligation to investigate; it does not mean that a party can be charged with constructive knowledge of a fact that reasonable investigation should not or could not have revealed. So, even if AA & D should have known of the Olga Franchi mortgage because it was recorded, and even if, standing alone, that mortgage did suggest something nefarious, putting AA & D on some kind of inquiry notice, the court majority does not explain why the mortgage should have sent it looking for the critical loan guarantee from Wells Fargo. *1240 Nor does the majority's explanation of how, exactly, AA & D was supposed to obtain the loan guarantee and South Street's bank records stand up to scrutiny. First, the majority says "AA & D could have conducted discovery before moving for a default judgment" in the 2009 case, or gotten postjudgment discovery under Mass.R.Civ.P. 69, 365 Mass. 836 (1974). Ante at ---- n.13, 107 N.E.3d at 1235 n.13. But the defendants in that case, South Street and Crowsnest, did not even file an answer in the 2009 case --perhaps precisely to avoid discovery -- resulting in judgments against them of over $400,000, which they have not paid in the ensuing years, even as interest accrues. A default ends the case. The idea that in those circumstances the defendants would have responded to discovery requests, or -- more to the point --that a plaintiff facing such defendants can be held not to have undertaken a diligent investigation for not making some such requests, either before moving for a default judgment, or after judgment under rule 69, would impose a costly and largely purposeless burden on both the litigant who has done nothing wrong and the courts, and would give a windfall to those who default and seek to avoid judgments rightly entered against them.
The majority also says that "AA & D also could have obtained most of the documents from Wells Fargo, who was named as a party in interest in the 2013 case." Ante at ---- n.13, 107 N.E.3d at 1325 n.13 Of course Wells Fargo would have had only the loan documents, not South Street's bank records, but even passing that, I find it exceedingly unlikely a mortgage lender would provide such records to a third party without a court order even assuming it would be lawful for it to do so, a question unbriefed before us. And, notwithstanding *707 the majority's conclusion that the Olga Franchi mortgage put the plaintiff on inquiry notice, I find it very difficult to imagine a court on the basis of that mortgage ordering Wells Fargo to turn over all the relevant loan documents, including the critical loan guarantee signed by three previously unknown individuals.
I thus do not see how AA & D could with reasonable diligence have discovered the three guarantors of the loan until the documents were turned over in discovery in the related action in 2014. Consequently, I would hold that the discovery rule prevented the causes of action against those three individuals from accruing until that time, and that, consequently, the claims against those defendants were brought timely in the instant action.
Likewise, until it obtained the bank records from Middlesex Savings Bank, the plaintiff could not have known that, rather than simply running out of money on the project,[5] South Street diverted funds from the loan to entities controlled by Domenic, John, and Lisa Carroll, which is the operative set of facts with respect to these causes of action.
I therefore would reverse the dismissal of counts II through VI of the complaint as to defendants South Street, Domenic Franchi, John Franchi, and Lisa Carroll on these independent bases. And, even if I am mistaken that the discovery-rule issue can be decided as a matter of law in favor of AA & D, it is certainly clear that when, exactly, AA & D should have known of these causes of action presents at least a jury question rendering the dismissal of these counts improper. See Riley v. Presnell, 409 Mass. 239, 240, 565 N.E.2d 780 (1991) ("[W]hen a plaintiff knew or should have known of his cause of action is one of fact which in most instances will be decided by the trier of fact").
*1241 The defendants Olga Franchi and David Franchi stand on a somewhat different footing. In the related suit filed in January of 2013, Olga Franchi and David Franchi were named as defendants. AA & D argued in that case that there was a diversion of funds from the project to Olga, evidenced by the repayment of her mortgage and its recorded discharge in 2009. A final judgment (which was affirmed on appeal) was entered as to Olga Franchi in that case and it is thus res judicata as to her. Likewise, because that case is still pending against David Franchi, this case is barred as to him by Mass.R.Civ.P. 12(b)(9), as amended, 450 Mass. 1403 (2008). Dismissal as to those two defendants was thus appropriate.
*708 For these reasons I respectfully dissent with respect to so much of the judgment as dismissed the claims against South Street, Domenic Franchi, John Franchi, and Lisa Carroll. I would affirm so much of the judgment as dismissed the claims against David Franchi and Olga Franchi.

Because some of the individual defendants have the same surname, we use their first names for ease of reference.

Attached to the defendants' motions to dismiss were various pleadings filed in prior cases brought by AA & D. Attached to AA & D's opposition to the motions to dismiss were various documents that AA & D claims were obtained during the course of conducting discovery in a case filed against David, Olga, and Crowsnest in 2013. The judge apparently considered these pleadings and documents; however, neither side requested that the defendants' motions be converted into ones for summary judgment and the judge did not do so sua sponte.

The contract identifies South Street as the "owner."

The original principal amount of the loan was $9,550,000. The complaint alleges that these funds were required to be used exclusively for the construction project and that the contract between Crowsnest and AA & D provided that payments to AA & D would be made no later than ten days after receipt by Crowsnest of funds from South Street and/or Wells Fargo.

The mortgage was granted on February 25, 2009.

Wells Fargo filed an answer in which it asserted among other defenses that "Wells Fargo holds a construction mortgage on the real estate that is the subject matter of the Complaint, which mortgage takes priority over any lien that the Plaintiff may obtain pursuant to the Complaint." Wells Fargo attached a copy of the construction mortgage to its answer.

Wells Fargo filed a limited opposition to AA & D's motion for a default judgment against South Street in response to AA & D's request that the property be sold and the sale proceeds applied to the sum owed to AA & D. Wells Fargo argued that AA & D's lien was extinguished because it had foreclosed on the property, which was sold at auction on March 31, 2010, for $1,500,000, leaving a multi-million dollar deficiency on Wells Fargo's secured debt. No action appears to have been taken on Wells Fargo's opposition.

We agree with the dissent that dismissal of the complaint is warranted as to David because the 2013 case against him is still pending, and as to Olga under the doctrine of res judicata. See post at ----, 107 N.E.3d at ----. In light of our conclusion regarding the statutes of limitations, however, we do not discuss those subjects further.

AA & D conceded before the motion judge that (1) the tort claims alleged in counts II and III have a three-year statute of limitations, G. L. c. 260, § 2A ; (2) the claim alleged in count IV is contractual in nature and thus has a six-year statute of limitations, G. L. c. 260, § 2 ; (3) the claim alleged in count V has a four-year statute of limitations, G. L. c. 260, § 5A ; and (4) count VI does not allege a separate cause of action but is an alternative theory of liability, see Lipsitt v. Plaud, 466 Mass. 240, 253 n.14, 994 N.E.2d 777 (2013).

The documents are as follows: (1) personal financial statement of David, dated April 29, 2009; (2) building loan agreement between South Street and Wells Fargo dated February 7, 2008; (3) repayment and completion guaranty of David, John, and Lisa, dated February 7, 2008; (4) notice of default on behalf of Wells Fargo dated August 20, 2008; and (5) demand letter of behalf of Wells Fargo dated July 22, 2009.

That statute provides, in relevant part, that if a judgment remains unsatisfied, the judgment creditor "may at any time after the judgment, subject to [G. L. c. 260, § 20, providing that a judgment is presumed satisfied twenty years after it is rendered], bring a civil action thereon." AA & D has not pursued an action under the statute despite obtaining writs of execution on the judgment in 2012 and 2016.

The dissent suggests that the documents in question were not discoverable because Crowsnest and South Street defaulted in 2010. See post at ----, 107 N.E.3d at ----. However, AA & D could have conducted discovery before moving for a default judgment, and it could have proceeded under Mass.R.Civ.P. 69, 365 Mass. 836 (1974), to locate assets from which the South Street judgment could be satisfied after the default judgments entered. "Rule 69, in aid of a judgment, makes available postjudgment discovery and equips the court with 'all the traditional flexibility of a court of equity,' including enforcement of orders of the court against persons who may not originally have been parties." Evans v. Multicon Constr. Corp., 30 Mass. App. Ct. 728, 732, 574 N.E.2d 395 (1991), quoting from Geehan v. Trawler Arlington, Inc., 371 Mass. 815, 817-818, 359 N.E.2d 1276 (1977). AA & D also could have obtained most of the documents from Wells Fargo, who was named as a party in interest in the 2013 case. Similarly, AA & D knew David Franchi was a principal and could have sought discovery from him.

The dissent posits that the mortgage to Olga could only have been discovered by conducting a title search, which would have imposed an unnecessary burden on AA & D. See post at ----, 107 N.E.3d at ----. However, AA & D apparently had no difficulty conducting a search, perhaps a limited one, in 2013.

We note that the complaint does not set forth any factual allegations to support this contention. The complaint does not allege which material facts were concealed, by whom, or how; indeed, there are no factual allegations of specific actions taken by any of the defendants which would support an inference that they intentionally concealed their identities from AA & D.

The defendants also argue that (1) the South Street judgment is void because a damages remedy was not within the court's jurisdiction under the mechanic's lien statute and Mass.R.Civ.P. 54(c), as amended, 463 Mass. 1401 (2012); and (2) fraud was not pleaded with particularity as required by Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974). These claims have not been overlooked; in light of our conclusion, they need not be addressed.

The parties agree that the following statutes of limitations apply: three years for counts II and III, six years for count IV, and four years for count V. Although in its motion for reconsideration of the trial court's dismissal of its lawsuit AA & D attempted to assert that count VI was in fact an action to enforce a judgment, which has a twenty-year limitations period, see G. L. c. 235, § 19 ; G. L. c. 260, § 20, I agree with the court majority that this untimely argument is waived in this case. See ante at ----, 107 N.E.3d at ----.

It is irrelevant that the mortgage may have been superior to the mechanic's lien. There is nothing one filing a mechanic's lien on real property can do about that, as it occurs by operation of law. See Evans Prod. Co. v. D.J. Dev. Corp., 6 Mass. App. Ct. 306, 308 n.2, 375 N.E.2d 345 (1978) (priority of mechanic's liens vis-à-vis mortgages is determined by statute). Nor would uncovering the existence of a prior encumbrance be of any benefit to one filing a mechanic's lien, as recording puts one on constructive notice -- not inquiry notice -- of the existence of the prior encumbrance. See Bank of Am., N.A. v. Casey, 474 Mass. 556, 567, 52 N.E.3d 1030 (2016) ("[C]onstructive notice arises by operation of law under G. L. c. 183, § 4, in any case where the mortgage is properly recorded").

The only information AA & D obtained from the Trial Court Information Center -- that "dozens of suits were filed in Middlesex Superior Court by creditors and contractors against [David Franchi] and the corporate entities in which he was a principal," including four suits by others for nonpayment related to the project on which AA & D worked -- is irrelevant to the question before us, as it neither suggested that there were three unknown guarantors of the Wells Fargo loan, nor indicated that the proceeds of that loan had been siphoned off to other entities controlled by the three loan guarantors. Nonetheless, I think the majority is in error in holding that any reasonable party in AA & D's position, prior to 2013, would have combed through the Trial Court Information Center records for lawsuits involving David Franchi and the corporate entities in which he was a principal. In 2010, AA & D obtained a default judgment against Crowsnest and South Street for the entire value of the unpaid work. Whether, if the information were relevant, no reasonable party in that position would have omitted such a search, and, if so, how long a reasonable party would have waited before conducting it, cannot be resolved at the motion to dismiss stage.

The court majority observes that, in a responsive pleading filed in a related action in 2013, AA & D claimed knowledge that the mortgage to Olga was fraudulent. But this tells us nothing about when (or how) AA & D should have learned of the discharge. This suit was filed on October 30, 2015, and so the earliest accrual date for the shortest limitations period in this case is October 30, 2012. The prior suit was filed on January 11, 2013, and AA & D's pleading that refers to a fraudulent mortgage was filed on March 4, 2013. Given this timeline, it is entirely possible -- and an inference we must draw at the motion to dismiss stage -- that AA & D discovered the purportedly fraudulent mortgage after October 30, 2012.

Or diverting it to Olga, see infra.