NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-836

THOMAS J. MANNING

vs.

MICHAEL D. GARGAS[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Thomas J. Manning, filed a five-count complaint in the Superior Court against the defendant, attorney Michael D. Gargas, the court-appointed personal representative of the estate of Manning's mother, Mary S. Manning (mother), alleging breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, fraud, and violation of G. L. c. 93A. A judge granted Gargas's motion to dismiss all counts, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). This appeal followed. For the reasons stated below, we affirm.

1. Background. "[W]e summarize the facts alleged in the unverified complaint and in uncontested documents of record"

---

[1] Individually and as personal representative of the estate of Mary S. Manning.
[2] John Does 1-5.

that were attached to the pleadings, Marram v. Kobric Offshore Fund, Ltd., 442 Mass. 43, 45 & n.4 (2004), along with the court's records in the estate action, Jarosz v. Palmer, 436 Mass. 526, 530 (2002), taking the factual allegations as true and drawing all reasonable inferences in Manning's favor. Lanier v. President and Fellows of Harvard College, 490 Mass. 37, 40 (2022).  In October 2016, the probate court appointed Gargas to serve as special personal representative of the mother's estate.  In April 2017, Manning told Gargas about claims the estate may have for torts arising out the mother's stay at Aviv Centers for Living, Inc.  Gargas told Manning he would "properly investigate" the claims against Aviv.  On May 15, 2017, Gargas sent Manning an email stating, "From what I have learned, I will not be pursuing any claim vs. Aviv. . . . You mentioned you would seek to pursue them if I did not."  Manning did not contest Gargas's decision because he intended to pursue the claim himself.  In January 2018, Gargas petitioned the probate court for approval of his final accounting and settlement of the estate.

On February 27, 2018, Manning filed a pro se action in Superior Court against Aviv seeking damages on behalf of the estate.  The same day, he also filed objections in probate court to Gargas's final accounting.  Manning cited, among other things, Gargas's "non-communicati[on] as to how his final

2

account petition impact[ed]" the Superior Court claims, and asserted that "Gargas [was] aware of" those claims. After a hearing, the judge approved Gargas's final accounting, and a decree entered settling the estate.

Meanwhile, Manning had collected $3,187 for the benefit of the estate and asked Gargas how to distribute it. When Gargas did not answer, Manning filed a petition for appointment as successor personal representative. Gargas asserted that his authority had not expired and Manning should send the funds to him. One month after the petition was dismissed on August 13, 2018, Manning wrote to Gargas, stating that Gargas's breach of "fiduciary duty to inform me that it was simply a matter of sending the proceeds to you . . . caused me direct financial loss of $694." The complaint alleged Gargas was ordered on August 13, 2018, to file an amended final accounting before distributing the additional funds. In September, Gargas represented that he was doing so. In December, he said the documents were filed when in fact they were not.

The following April, a motion by Aviv to dismiss Manning's Superior Court action was allowed on the ground that Manning could not represent the estate pro se. Thereafter, Manning tried to retain counsel, but every attorney with whom he spoke wanted to know why Gargas decided not to pursue the claim. Gargas did not respond to Manning's requests for information

3

until March 26, 2021. Answering a subpoena issued in a second Superior Court action against Aviv that Manning filed, this time in his capacity as a beneficiary of the estate, Gargas said "that he had no responsive document referring to or relating to an investigation of a claim against Aviv." Manning took this as "a tacit admission that [Gargas] did not properly investigate the claim."

A document Gargas did produce in response to the subpoena was dated January 2018 and showed that Gargas gave Aviv's attorneys a copy of his May 2017 email to Manning in which he stated that he would not be pursuing a claim on behalf of the estate and Manning had "mentioned" doing so. Manning believed this document proved the falsity of Gargas's March 27, 2018 statement that he was unaware of Manning's Superior Court claims and showed that, by communicating with Aviv's attorneys about Manning's claims, Gargas helped Aviv get the first Superior Court action dismissed. Gargas also helped Aviv get Manning's second Superior Court action dismissed in July 2021, as evidenced by Aviv's argument in support of its motion, that Gargas did not pursue the claim on behalf of the estate because he and Manning's siblings "believed there was no viable cause of action." "If truthful this information could only have been learned from Gargas and [wa]s information that Gargas refused to provide to [Manning]." In August 2021, without requesting a

4

hearing in probate court, Gargas distributed the additional funds, paid himself $3,125, and held another $1,400 in estate funds.

In March 2022, Manning filed the instant complaint seeking damages for breach of fiduciary duty, fraudulent concealment, fraudulent misrepresentation, fraud, and violation of G. L. c. 93A. Specifically, Manning alleged that Gargas was liable for "not tak[ing] reasonable steps to investigate the claim against Aviv" and then intentionally misrepresenting that he "properly investigated"; communicating with opposing counsel to get Manning's actions dismissed rather than disclosing information to Manning; misrepresenting that he filed the amended accounting; and improperly handling estate funds post decree. Manning claimed that each of these actions was unfair and deceptive and caused Manning "loss of the value of the claim against Aviv."

2. Discussion. "We review the grant of a motion to dismiss de novo, accepting as true all well-pleaded facts alleged in the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, and determining whether the allegations plausibly suggest that the plaintiff is entitled to relief." Lanier, 490 Mass. at 43. On our review, there was no error.

a.  Breach of fiduciary duty, fraudulent misrepresentation, and fraud.  Manning claims the judge erred in determining that his claims were precluded by the probate court decree settling the estate, and failed "to satisfy the heightened pleading standard" or "meet the elements required for a claim of fraud."  He argues that the motion to dismiss was improperly granted because Gargas's conduct after the decree entered was not previously litigated and "the heightened pleading standard was met."[3]

As a special personal representative, Gargas was empowered by his appointment to investigate the estate's claim against Aviv and decide to not pursue it, communicate with other attorneys about actions affecting the estate, compensate himself, and deposit funds not immediately distributable.  See G. L. c. 190B, § 3-715 (a) (5), (18), (22).  The probate court approved Gargas's actions by entering a decree settling the estate and "discharging the personal representative from further claim or demand of any interested person."  G. L. c. 190B, § 3-1001 (b).  That discharge insulated Gargas "from all liability under such decree unless his account [could be] impeached for fraud or manifest error."  Id.  Therefore, Manning's breach of fiduciary duty allegation fails unless he sufficiently pleaded

---

[3] On appeal, Manning does not appear to challenge the judge's dismissal of the fraudulent concealment count.

6

fraud or manifest error.  Here, Manning claimed fraud but not manifest error.

To state a claim of fraud or fraudulent misrepresentation, Manning must allege that Gargas made "[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that [Manning] relied upon the representation as true and acted upon it to his [] damage" (citation omitted).  Balles v. Babcock Power Inc., 476 Mass. 565, 573 (2017).  We agree with the judge that Manning did not support the claim with factual allegations plausibly suggesting entitlement to relief.  See Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("labels and conclusions" insufficient).

To support his claim of fraud, Manning alleged that Gargas made fraudulent misrepresentations regarding investigating claims against Aviv.  However, Manning's complaint failed to define "reasonable steps" and "properly investigate."  Gargas's investigation was not described other than he "checked around." Thus, even if it would have been "reasonable" and "proper" for Gargas to ask for and review medical records to determine whether the mother's healthcare proxy was properly invoked, as Manning suggested to us at oral argument, there were no facts

7

supporting an inference that Gargas did not do those things.[4]

Gargas's lack of documentation in 2021 of what he did to "check around" in 2017 did not support the inference that Manning made fraudulent misrepresentations about his investigation regarding Aviv.

Manning also pointed to Gargas's March 27, 2018 statement that he was unaware of Manning's Superior Court claims to show a false representation. However, we do not think it reasonable to infer from Gargas's sharing of the May 2017 email in January 2018 that his statement in March 2018, that he was just learning of claims filed in February, was false. This is especially true where Gargas was not a party to the Superior Court action and the email made only passing reference to Manning's "mention" of pursuing the claim.

Even if it were a reasonable inference, however, Manning's claims based on the statement would still fail, because it was plain from the face of the complaint that they were untimely. See Commonwealth v. Tradition (N. Am.) Inc., 91 Mass. App. Ct. 63, 70 (2017). Having cited Gargas's awareness of the Superior Court claims in his objections to the final accounting, Manning immediately knew or should have known at the hearing on those objections that Gargas's statement was false. See AA&D Masonry,

---

[4] Manning conceded that he never asked Gargas what "checked around" meant and Gargas never told him.

8

LLC v. South St. Business Park, LLC, 93 Mass. App. Ct. 693, 698 (2018) (cause of action accrues on happening of event likely to put plaintiff on notice of facts giving rise to cause of action). Manning's March 2022 complaint, filed one year beyond the period for bringing "actions of tort," G. L. c. 260, § 2A, was too late.[5]

Even to the extent Manning alleged that Gargas engaged in post decree fraud, misrepresentation, and inadequate disclosure, such issues must be raised in the probate court in the first instance, see G. L. c. 190B, § 3-1005; G. L. c. 215, § 2, especially where we have no order in the record before us dated August 13, 2018, requiring Gargas to file an amended accounting and distribute additional funds. Therefore, an inference that Gargas acted outside the scope of his continuing "duty to preserve [such] assets . . . , to account therefor and to deliver the assets," would not be reasonable. G. L. c. 190B, § 3-608.

b. Violation of G. L. c. 93A. Manning claims error in the judge's determination that Gargas, in his capacity as personal

---

[5] The same is true for Manning's claims based on the petition for appointment as successor personal representative. Manning told Gargas in September 2018 that Gargas's breach of fiduciary duty in connection with that action caused Manning financial loss, but he did not file suit until more than three years later. See Tradition (N. Am.) Inc., 91 Mass. App. Ct. at 71 (limitations period begins when plaintiff has sufficient notice it was harmed by defendant's conduct).

9

representative of the estate, was not engaged in trade or commerce" within the meaning of c. 93A.  Manning argues the c. 93A claim should be analyzed under § 9, relating to consumer transactions, rather than § 11, relating to commercial ones.  As the judge correctly discerned, Gargas's pre and post decree "actions in administering the estate" were not "trade or commerce 'directly or indirectly affecting the people of this Commonwealth,'" Gannett v. Lowell, 16 Mass. App. Ct. 325, 328 (1983), quoting G. L. c. 93A, § 1 (b), and thus fell outside the scope of the "acts or practices" actionable under c. 93A, G. L. c. 93A, § 2 (a), whether the transaction was a consumer or commercial one.  See G. L. c. 93A, §§ 9 (1), 11.  Dismissal of the complaint was appropriate not only for all these reasons, but also because Gargas's actions did not cause Manning to lose the value of the claim against Aviv.  Manning could and did assert the claim; in the second Superior Court action, the judge determined it was not his to assert.

Judgment affirmed.

By the Court (Milkey, Singh & Brennan, JJ.[6]),

Joseph F. Stanton
Clerk

Entered:  August 17, 2023.

---

[6] The panelists are listed in order of seniority.

10