NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13354


AMY DOUCET[1] & another[2] vs.  FCA US LLC[3] & another.[4]



Essex.       February 8, 2023. - June 8, 2023.

Present:  Budd, C.J., Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Jurisdiction, Personal, Long-arm statute, Nonresident.  Due
    Process of Law, Jurisdiction over nonresident.  Practice,
    Civil, Motion to dismiss.



Civil action commenced in the Superior Court Department on
May 17, 2021.

A motion to dismiss was heard by Janice W. Howe, J.; a
motion for reconsideration was considered by her, and entry of
separate and final judgment was ordered by her.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.

---

[1] As guardian of Paul Gregory Doucet.

[2] Denise Sutton, as guardian of Paul Gregory Doucet.

[3] Formerly known as Chrysler Group LLC.

[4] Sudbay Chrysler Dodge, Inc.

Deepak Gupta, of the District of Columbia (Andrew D. Nebenzahl, Carly J. LaCrosse, & Matthew W.H. Wessler also present) for the plaintiffs.

Peter M. Durney (Christopher J. Hurst also present) for FCA US LLC.
The following submitted briefs for amici curiae:
Ben Robbins & Daniel B. Winslow for New England Legal Foundation.
Jeffrey R. White & Robert S. Peck, of the District of Columbia, Peter J. Ainsworth, Thomas R. Murphy, Kevin J. Powers, & Kyle A. Camilleri for Massachusetts Academy of Trial Attorneys & another.
Cassandra Burke Robertson, Charles W. Rhodes, & Linda Sandstrom Simard, pro se.
Larry E. Coben, of Pennsylvania, Michael Brooks, of the District of Columbia, & Michael K. Gillis for Center for Auto Safety & another.

KAFKER, J.  Paul Doucet was rendered incapacitated by an automobile accident in New Hampshire in 2015.  His guardians (the plaintiffs) have brought a tort suit against the manufacturer of the car in which he was a passenger, FCA US LLC (FCA US), and the Massachusetts distributor-dealership, Sudbay Chrysler Dodge, Inc. (Sudbay).[5]  The car in question, a 2004 Chrysler Sebring, was first sold by Sudbay in Massachusetts and later purchased in New Hampshire by Doucet, a New Hampshire resident.  At issue is whether Massachusetts has personal jurisdiction over one of the defendants, FCA US, under the Commonwealth's long-arm statute, G. L. c. 223A, § 3, and the due

---

[5] Sudbay, which is incorporated in and maintains a principal place of business in Massachusetts, is not involved in this appeal.

process clause of the Fourteenth Amendment to the United States Constitution. We conclude that it does, and we vacate the trial court's dismissal of FCA US as a party to this case.[6]

1. Background. At this stage of the proceedings, we "accept[] the allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor." Harrington v. Costello, 467 Mass. 720, 724 (2014). FCA US is a Delaware limited liability company with its principal place of business in Michigan. FCA US's predecessor in interest[7] manufactured the Sebring around which this case revolves.

A dealership in Rhode Island first received the Sebring from the manufacturer before transferring it to Sudbay, a dealership in Gloucester. Sudbay initially leased the car to a Massachusetts resident in 2003. The car was then purchased by a Massachusetts resident in 2006, and it subsequently was sold to two other Massachusetts residents, before a New Hampshire resident purchased the vehicle in 2011. This resident then sold

---

[6] We acknowledge the amicus briefs submitted by New England Legal Foundation; Massachusetts Academy of Trial Attorneys and American Association for Justice; civil procedure and Federal courts professors; and Center for Auto Safety and Attorneys Information Exchange Group.

[7] FCA US is the successor in interest to Chrysler Group LLC and inherited certain of its liabilities, including the products liability claim at issue. Previously, FCA US argued that it did not acquire liability for the claims brought by the plaintiffs, but it has since abandoned that argument.

it in a private sale to Doucet, also a New Hampshire resident, in 2013.

In 2015, Doucet was riding in the front passenger's seat of the Sebring when it was involved in a front-end collision in New Hampshire. He suffered a traumatic brain injury after the passenger's side A-pillar (windshield and roof support) struck his head. Consequently, the plaintiffs first brought a products liability action solely against FCA US in the Superior Court in New Hampshire. FCA US removed the case to the United States District Court for the District of New Hampshire, where a judge ruled in FCA US's favor that New Hampshire lacked personal jurisdiction over it, and dismissed the case.

The plaintiffs then filed their suit in the Superior Court in Suffolk County against both FCA US and Sudbay (collectively, the defendants). Again, FCA US removed the case to the Federal District Court in the State in which the plaintiffs had filed suit -- this time, the United States District Court for the District of Massachusetts. The Federal District Court judge ruled that Massachusetts has personal jurisdiction over FCA US but remanded the matter to the Superior Court for lack of subject matter diversity jurisdiction in the Federal court, as the inclusion of the defendant Sudbay as a Massachusetts corporation prevented complete diversity.

FCA US then filed a motion to dismiss for want of personal jurisdiction and improper venue in the Superior Court in Suffolk County.  The motion judge transferred the case to the Superior Court in Essex County, the county in which Sudbay operates its sole place of business.  There, after a hearing on the motion, the judge ultimately concluded that Massachusetts lacked personal jurisdiction over FCA US under both the Commonwealth's long-arm statute, G. L. c. 223A, § 3, and the Federal Constitution's due process clause.[8]  The judge dismissed FCA US as a party to the case, and the plaintiffs appealed.[9]  We transferred the case sua sponte from the Appeals Court.

2.  Discussion.  "Jurisdictional questions are questions of law, which we review de novo."  Bask, Inc. v. Municipal Council of Taunton, 490 Mass. 312, 316 (2022).  "For a nonresident to be subject to the authority of a Massachusetts court, the exercise of jurisdiction must satisfy both Massachusetts's long-arm statute, G. L. c. 223A, § 3, and the requirements of the due

---

[8] In evaluating personal jurisdiction pursuant to Federal due process, the judge in the Superior Court in Essex County found that the plaintiffs failed to establish "relatedness"; therefore, the judge did not consider other components of this analysis.

[9] The plaintiffs first filed a motion for reconsideration or, in the alternative, entry of separate and final judgment on two counts of their complaint against FCA US.  The trial court denied the former and allowed the latter, paving the way for this appeal.

process clause of the Fourteenth Amendment . . . ." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 314 (2018), cert. denied, 139 S. Ct. 794 (2019) (Exxon Mobil). The plaintiffs argue that these requirements are satisfied with respect to FCA US, a nonresident of Massachusetts, while FCA US maintains that they are not. We address each argument in turn, beginning with our long-arm statute to "avoid unnecessary consideration of constitutional questions." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017) (SCVNGR). We conclude that Massachusetts has personal jurisdiction over FCA US, pursuant to both State and Federal law, vis-à-vis the plaintiffs' claims. We therefore reverse the motion judge's dismissal of FCA US as a defendant to this case and remand for further proceedings consistent with this opinion.[10]

a. Long-arm statute. "General Laws c. 223A, § 3, sets out a list of specific instances in which a Massachusetts court may acquire personal jurisdiction over a nonresident defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Among the enumerated options provided is "transacting any business in this commonwealth." G. L. c. 223A, § 3 (a). We routinely have

---

[10] The plaintiffs have requested that, should we conclude they have not demonstrated personal jurisdiction on the facts before us, we grant them jurisdictional discovery. Because we conclude that personal jurisdiction exists on these facts, we need not reach that issue.

construed this clause broadly.  Tatro, supra.  To meet this criterion, a plaintiff must allege facts that "satisfy two requirements -- the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant."  Id.

Here, the plaintiffs argue that their claims arose from FCA US's predecessor's transaction of business in the Commonwealth as demonstrated by a Massachusetts distributor-dealership first leasing and selling the Sebring, all in the stream of commerce. In response, FCA US counters that neither it nor its predecessor in interest "transact[ed] any business" in connection with the plaintiffs' claims.  First, the Sebring was initially sent to a Rhode Island -- not a Massachusetts -- dealership, and second, the assumption of liability as a successor in interest does "not qualify as" the transaction of business.  Furthermore, FCA US argues, even if it has transacted business in Massachusetts, the plaintiffs' claims did not arise from any such transactions because Doucet did not purchase the Sebring in Massachusetts.

We first consider whether FCA US, through its predecessor in interest, transacted business in the Commonwealth.  "Although an isolated (and minor) transaction with a Massachusetts resident may be insufficient, generally the purposeful and successful solicitation of business from residents of the

Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." Tatro, 416 Mass. at 767.

In Exxon Mobil, 479 Mass. at 317-318, we concluded that Exxon Mobil Corporation (Exxon) had transacted business in the Commonwealth when it executed franchise agreements with "a franchise network of more than 300 retail service stations" in Massachusetts. Business deals with "Massachusetts-based limited liability compan[ies] . . . represent[ed] Exxon's 'purposeful and successful solicitation of business from residents of the Commonwealth." Id. at 318, quoting Tatro, supra. Similarly, FCA US, formerly known as Chrysler Group LLC, contracts with former Chrysler dealerships, like Sudbay, throughout Massachusetts, to conduct business under the FCA US name. Through these preexisting and ongoing business agreements with Sudbay and other FCA US dealerships in Massachusetts, FCA US engages in the "purposeful and successful solicitation of business from residents of the Commonwealth," Exxon Mobil, supra, by distributing cars manufactured by FCA US and Chrysler as FCA US's predecessor in interest. We conclude, therefore, that FCA US has transacted business in Massachusetts.

We turn next to whether the plaintiffs' claims arise from FCA US's transaction of business in Massachusetts. To make this determination, we employ a "but for" causation test. See Tatro, 416 Mass. at 770-771 (comparing proximate and "but for" cause

interpretations across several jurisdictions). The "but for" causation test requires us to consider whether the distribution of the Sebring in Massachusetts by FCA US's predecessor in interest is "the first step in a train of events that results in the personal injury." Id. at 770. We conclude that it is.

In Tatro, 416 Mass. at 765-768, the defendant, a California hotel, contracted with a national organization to provide accommodations at a special rate for an upcoming conference, and the plaintiff, a Massachusetts resident and member of the national organization, booked a room directly with the hotel based on the mailing she received from the organization, advertising the conference rate. During her stay, she fell and was allegedly injured in her room. Id. at 766. We recognized that, "but for the defendant's solicitation of business in Massachusetts," id. at 771, including the hotel's contract with the organization and "arrangements with several Massachusetts corporations," id. at 766, "and its agreement to provide the plaintiff with hotel accommodations in . . . California, the plaintiff would not have been injured in a room of the hotel," id. at 771-772. The fact that the injury occurred out of State did not mean the injury did not arise from those business transactions in Massachusetts, see id. at 771, and so "the requirements of G. L. c. 223A, § 3 (a) [were] satisfied," id. at 774.

Recently, in von Schönau-Riedweg v. Rothschild Bank AG, 95 Mass. App. Ct. 471, 472, 474 (2019), the plaintiff, a Swiss citizen, sought relief against a Swiss bank based on the actions of its agent, a director at the bank, for significant monetary losses stemming from the director's advice. The director had advised the plaintiff to invest in "two Massachusetts-based companies" with whom he had extensive business transactions. Id. at 472, 489-490. Although the trial court dismissed the bank for lack of personal jurisdiction under the long-arm statute, the Appeals Court remanded for a hearing after concluding that the plaintiff met her prima facie burden that jurisdiction existed, should the director be an agent of the bank. Id. at 473-474, 490-491. If the director was acting as the bank's agent, then "a direct line [could] be drawn from his Massachusetts contacts and [his] advice, such that 'but for' [his] actions in Massachusetts" the plaintiff would not have invested in the Massachusetts businesses. Id. at 490, quoting Tatro, 416 Mass. at 771.

We conclude that the "but for" causation requirement is satisfied in the instant case. The automobile was first sold in Massachusetts and remained here for several years before it was sold to a resident of a neighboring State. But for the first sale here, the Sebring would not have ended up with Doucet. FCA US argues, however, that "the only connection to Massachusetts

is a highly tangential one," because its predecessor initially shipped the car to a Rhode Island dealership, and second, once FCA US's distributor placed the Sebring into the stream of commerce in Massachusetts with the initial lease and sale, several others purchased it in Massachusetts and New Hampshire before Doucet's purchase and injury in New Hampshire.  Although there are multiple links in the factual chain, our decision in Tatro supports personal jurisdiction.  But for FCA US's extensive business transactions in Massachusetts, which included distributing the Sebring through the Massachusetts dealership, Doucet would not have been injured in New Hampshire, making FCA US's distribution in Massachusetts "the first step in a train of events that results in the personal injury."  See Tatro, 416 Mass. at 770.  Consistent with our broad construction of G. L. c. 223A, § 3 (a), see id. at 767, we conclude that Doucet's claims arose from FCA US's transaction of business in the Commonwealth, in satisfaction of our long-arm statute.

b.  Federal due process.  Having first established jurisdiction under our long-arm statute, we now consider whether specific personal jurisdiction over FCA US in Massachusetts comports with due process under the Federal Constitution.  See SCVNGR, 478 Mass. at 325.  "The Fourteenth Amendment's Due Process Clause limits a [S]tate court's power to exercise jurisdiction over a defendant."  Ford Motor Co. v. Montana

Eighth Judicial Dist. Court, 141 S. Ct. 1017, 1024 (2021) (Ford Motor).  "The primary focus of" the Federal "personal jurisdiction inquiry is the defendant's relationship to the forum State."  Bristol-Myers Squibb Co. v. Superior Court of Cal., 582 U.S. 255, 262 (2017) (Bristol-Myers).

This long-standing constitutional requirement for personal jurisdiction "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our [F]ederal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'"  Ford Motor, 141 S. Ct. at 1024, quoting International Shoe Co. v. Washington, 326 U.S. 310, 316-317 (1945) (Int'l Shoe).  Defendants, as well as plaintiffs, must be treated "fairly," and the principles of "interstate federalism" must be respected "to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy."  Ford Motor, supra at 1025, quoting Bristol-Myers, 582 U.S. at 263.

The plaintiffs assert that they have demonstrated these requirements, whereas FCA US contends that the trial court correctly determined that personal jurisdiction fails on the ground that the plaintiffs' claims are not sufficiently related to FCA US's contacts in the forum, especially in light of recent United States Supreme Court decisions.

In analyzing these due process requirements, we focus our attention on the case-specific facts, particularly the extensive business FCA US undertakes in Massachusetts, as well as the nexus between the plaintiffs' claims and FCA US's business in Massachusetts -- specifically the sale of the automobile first in Massachusetts, and then to Doucet in the neighboring State of New Hampshire, where he was eventually injured.  In this circumstance, where FCA US engages in extensive business dealings in Massachusetts, and a causal relationship between those dealings and the plaintiffs' claims exists, we conclude that Massachusetts's exercise of personal jurisdiction over FCA US, with regard to the plaintiffs' claims, satisfies Federal due process.

i.  Purposeful availment.  We begin with "the contacts needed for" specific personal jurisdiction, which "often go by the name 'purposeful availment.'"  Ford Motor, 141 S. Ct. at 1024, quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (Burger King).  To satisfy this prong of the due process inquiry for personal jurisdiction, the plaintiffs must demonstrate that FCA US "has purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" (quotation omitted).  Knox v. MetalForming, Inc., 914 F.3d 685, 691 (1st Cir. 2019), quoting Hanson v. Denckla, 357 U.S. 235,

253 (1958).  Accord Ford Motor, supra at 1024-1025.  This "requirement ensures that the exercise of jurisdiction is essentially voluntary and foreseeable, and is not premised on a defendant's random, fortuitous, or attenuated contacts" (quotation and citations omitted).  Knox, supra.  Accord Burger King, supra.  Foreseeability means "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (World-Wide Volkswagen), while "[v]oluntariness requires that the defendant's contacts with the forum [S]tate proximately result from actions by the defendant himself" (quotation and citation omitted), PREP Tours, Inc. v. American Youth Soccer Org., 913 F.3d 11, 20 (1st Cir. 2019) (PREP Tours).  Ultimately, foreseeability and voluntariness ensure that the plaintiff's "unilateral activity" does not form the basis for jurisdiction over the defendant.  Id., quoting Burger King, supra at 474.  They also lend "a degree of predictability to the legal system" by "allow[ing] potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  PREP Tours, supra, quoting World-Wide Volkswagen, supra.

In the instant case, this requirement is readily satisfied. In their complaint, the plaintiffs allege that FCA US "transacts

business and contracts to supply services and/or things in this Commonwealth and has derived substantial revenue therefrom." That business includes the distribution of automobiles into the stream of commerce within Massachusetts, including the Sebring in the instant case.  The defendant Sudbay, a Massachusetts corporation, "operat[es] a car dealership that distributes FCA [US] vehicles into the stream of commerce within the Commonwealth," including the Sebring at issue.  The plaintiffs allege that FCA US and Sudbay are also both involved in the "inspecting, . . . selling, advertising, and marketing" of these automobiles.  The plaintiffs further allege that Sudbay initially sold or leased the Sebring "to a Massachusetts resident in May 2003," and that Sudbay, and other Massachusetts dealerships, serviced the vehicle up until it was "sold to a New Hampshire resident in April of 2011."  FCA US also has a registered agent in the Commonwealth.

The plaintiffs have thus clearly alleged that FCA US, through these ongoing distribution, maintenance, and marketing channels, "has purposefully avail[ed] itself of the privilege of conducting activities within" Massachusetts as "the forum State, thus invoking the benefits and protections of its laws" (quotation and citation omitted).  Knox, 914 F.3d at 691.  See Ford Motor, 141 S. Ct. at 1028 (purposeful availment where automobile manufacturer's "dealers . . . regularly maintain and

repair" its cars). Massachusetts's exercise of personal jurisdiction over FCA US, therefore, results from FCA US's "voluntary" acts and their "foreseeable" consequences and is not premised on "random, fortuitous, or attenuated contacts" (citation omitted). Knox, supra.[11]

ii. Relatedness. Although FCA US's extensive, voluntary business transactions in Massachusetts are a significant part of the due process analysis, they are not dispositive, as there must also be a relationship between the actions voluntarily undertaken in the jurisdiction and the plaintiffs' claims. See Ford Motor, 141 S. Ct. at 1025. After the plaintiffs demonstrate that the defendant "'exploit[ed] a market' in the forum State," id., quoting Walden v. Fiore, 571 U.S. 277, 285 (2014), they must also show that their claims "'arise out of or relate to the defendant's contacts' with the forum," Ford Motor, supra, quoting Bristol-Myers, 582 U.S. at 262. Known as relatedness, this prong of the due process analysis requires a

---

[11] Plus, FCA US has already faced a products liability suit for a car purchased from another Chrysler dealership in Massachusetts, Costa v. FCA US LLC, 542 F. Supp. 3d 83, 90 (D. Mass. 2021), without "rais[ing] personal jurisdiction objections" in that suit, further "bolster[ing]" a "finding of purposeful availment," Tom's of Me. v. Acme-Hardesty Co., 565 F. Supp. 2d 171, 182 (D. Me. 2008). Literally speaking, FCA US has already been "haled into court" in this forum State. See World-Wide Volkswagen, 444 U.S. at 297.

"demonstrable nexus" between the claim and "the defendant's forum contacts." Knox, 914 F.3d at 691.

In the context of a company doing extensive business in the forum State, this requirement is most clearly articulated in the United States Supreme Court's decision in Bristol-Myers, 582 U.S. 255. In that case, the Supreme Court determined that a California State court lacked personal jurisdiction over Bristol-Myers Squibb Company (BMS), id. at 268, "a large pharmaceutical company . . . incorporated in Delaware and headquartered in New York," for the nonresident plaintiffs'[12] claims for "injuries allegedly caused by" one of the prescription drugs manufactured and sold by BMS, id. at 258-259.

In so holding, the Court noted that "[t]he nonresident plaintiffs did not allege that they obtained [the drug] through California physicians or from any other California source; nor did they claim that they were injured by [the drug] or were treated for their injuries in California." Bristol-Myers, 582 U.S. at 259. The nonresident plaintiffs also did not allege that the drug "was designed and developed in BMS's California research facilities" (citation and alteration omitted). Id. at 260-261. Instead, they relied on the claims raised by resident

---

[12] BMS did not argue against personal jurisdiction for the claims brought by California residents in that mass tort action. See Bristol-Myers, 582 U.S. at 259.

plaintiffs who "prescribed, obtained, and ingested [the drug] in California," id. at 265, seemingly in an attempt to forum shop in a favorable State, Ford Motor, 141 S. Ct. at 1031.

Thus, the nonresident plaintiffs' claims had no actual connection to the forum State because "all the conduct giving rise to the nonresidents' claims occurred elsewhere." Bristol-Myers, 582 U.S. at 265. Simply, there was no "adequate link between the [forum] State and the nonresidents' claims." Id. at 264. Specific personal jurisdiction over BMS for these claims, therefore, was inappropriate in California, regardless of BMS's "extensive forum contacts that [were] unrelated to those claims," because, as the Court explained, "a defendant's general connections with the forum are not enough." Id.

In the instant case, unlike in Bristol-Myers, 582 U.S. at 264, not only did FCA US engage in extensive business dealings in the forum, but there is also a causal connection between its business dealings and the injury, albeit an indirect one, as the automobile was first sold in Massachusetts and eventually purchased by Doucet, a resident of a neighboring State. As explained supra in our discussion of personal jurisdiction under the Commonwealth's long-arm statute, "but for" the first sale of the automobile in Massachusetts, Doucet would not have ended up purchasing, driving, and being injured in the automobile in the neighboring State of New Hampshire. FCA US, nonetheless, claims

that this causal connection is too attenuated to support jurisdiction in Massachusetts.

In evaluating this attenuation argument, and whether these facts are sufficient to establish the necessary nexus between the defendant's contacts and the plaintiff's claims, both parties turn to the Supreme Court's recent decision in Ford Motor, 141 S. Ct. 1017, for guidance, as do we. In that case, the plaintiffs brought separate products liability suits against Ford Motor Company (Ford) in the courts of two States where serious car accidents occurred and where the victims resided. Id. at 1022-1023. Ford had argued that the State courts lacked personal jurisdiction "because the particular car involved in the crash was not first sold in the forum State, nor was it designed or manufactured there." Id. at 1022.[13]

The court, as well as the concurring opinions, rejected this analysis as unduly constrictive. See Ford Motor, 141 S. Ct. at 1026; id. at 1032 (Alito, J., concurring in the judgment); id. at 1039 (Gorsuch, J., concurring in the

---

[13] Thus, Ford was making the exact opposite argument of the one being made by the automobile company here: that is, that due process required jurisdiction in the State of first sale, not the State in which the injury occurred. See Ford Motor, 141 S. Ct. at 1022-1023. Indeed, FCA US successfully made the same argument, albeit before the issuance of Ford Motor, when the plaintiffs first sought to bring this suit in New Hampshire. As a result, in this case, the plaintiffs have been placed in a Kafkaesque procedural predicament by the defense.

judgment).  They all concluded that the combination of extensive business dealings in the forum State and an injury in that State was sufficient to confer jurisdiction.  In so holding, none of the opinions expressly ruled out that the combination of extensive dealings in the forum State and the first sale of the automobile at issue in the forum State would be sufficient.  Nonetheless, FCA US argues here that such an interpretation is implicit in the Court's and the concurrences' reasoning.  We disagree.

In upholding jurisdiction, Justice Kagan, writing for the Court, rejected Ford's strict "causation-only approach" as unnecessarily narrowing the bounds of specific personal jurisdiction.  Ford Motor, 141 S. Ct. at 1026.  In so doing, she emphasized that causation is one -- but not the only -- way to satisfy the "arise out of or relate to" requirement, which may be read in two parts.  Id.  "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."  Id.  In other words, the "relate to" clause captures more conduct than the "arise out of" clause, which hews more closely to "proof of causation -- i.e., proof that the plaintiff's claim came about because of the defendant's in-[S]tate conduct."  See id.  Furthermore, in evaluating how Ford's "conduct" in the forum States "relate[d] to the claims"

presented by forum State resident plaintiffs, the Court explained that the plaintiffs' suits "ar[ose] from . . . car accident[s] in" States where Ford "advertised, sold, and serviced" the allegedly defective car models (emphases added). Id. at 1028.  The Court concluded, therefore, that this behavior established "a strong relationship among the defendant, the forum, and the litigation -- the essential foundation of specific jurisdiction" (quotations and citation omitted).  Id.

As stated supra, the Court did not rule out jurisdiction where the first sale of the automobile at issue occurs in the State.  Rather, the thrust of the opinion was to expand, not contract, jurisdiction, beyond requiring "but for" causation. See Ford Motor, 141 S. Ct. at 1026.  Nevertheless, FCA US argues here that that was the Court's intent.  It does so based mostly on the discussion between the Court and Justice Gorsuch's concurring opinion, particularly the footnote addressing the concurrence written by Justice Gorsuch.  See id. at 1027 n.3. In that footnote, the Court wrote,

> "In thus reiterating this Court's longstanding approach, we reject Justice Gorsuch's apparent (if oblique) view that a [S]tate court should have jurisdiction over a nationwide corporation like Ford on any claim, no matter how unrelated to the State or Ford's activities there.  See [id.] at 1039.  On that view, for example, a California court could hear a claim against Ford brought by an Ohio plaintiff based on an accident occurring in Ohio involving a car purchased in Ohio.  Removing the need for any connection between the case and forum State would transfigure our specific jurisdiction standard as applied to corporations.

"Case-linked" jurisdiction, see [id.] at 1024-1025, would
then become not case-linked at all."

Id. at 1027 n.3. See id. at 1035 (Gorsuch, J., concurring in
the judgment).

We reject this interpretation by FCA US of that footnoted
discussion and of the Court's decision as a whole. Where a
first sale of the automobile that caused the injury occurred in
the State, there is a relationship between the claim stemming
from that injury and the defendant's contacts in the forum. See
Ford Motor, 141 S. Ct. at 1026. There are not only extensive
business dealings by the defendant in the State in which
jurisdiction is sought, but also business dealings related to
the automobile that is the subject of the litigation. See id.
at 1022, 1026. Consequently, there is a "strong relationship
between the defendant, the forum, and the litigation" (quotation
and citation omitted). Id. at 1028. See id. at 1035 (Gorsuch,
J., concurring in the judgment) (State in which allegedly
defective automobile at issue in suit is sold has "strong
interest in ensuring [it does not] become marketplace[] for
unreasonably dangerous products").[14]

---

[14] Our interpretation of Ford Motor is consistent with those
of Federal and other State courts that have applied Ford Motor
since its recent issuance. For example, in the United States
District Court for the District of Idaho, the court found
relatedness stemming from a "but for" causation relationship in
which a foreign corporation sold and shipped products to a
distributor in Idaho, who then sold the defective product to

iii. <u>Reasonableness and interstate federalism</u>. Lastly, "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,'" <u>Burger King</u>, 471 U.S. at 476, quoting <u>Int'l Shoe</u>, 326 U.S. at 320, and the principles of interstate federalism, <u>Ford Motor</u>, 141 S. Ct. at 1025, 1030. We conclude that specific personal jurisdiction in

---

Pennsylvania plaintiffs, causing injury to them there in their State of residence. See McHugh <u>vs</u>. Vertical Partners W., LLC, U.S. Dist. Ct., No. 2:20-cv-00581-DCN, slip op. at 2, 11-12 (D. Idaho Apr. 19, 2021). Like this case, the plaintiffs brought their suit not in their State of residence, but in the State where the defective product was first sold. <u>Id</u>. at 2. Unlike this case, however, the plaintiffs purchased the item directly from the forum State distributor. <u>Id</u>. Regardless, "but for" the foreign corporation first sending its defective product to the forum State distributor, the injury would not have occurred out of State. See <u>id</u>. That is the same scenario presented here: but for FCA US sending the Sebring to a Massachusetts dealership-distributor, Doucet's injury would not have occurred in New Hampshire.

In a products liability case this year, the First District Appellate Court of Illinois recognized personal jurisdiction over a South Korean corporation, which manufactured a battery that allegedly exploded inside another product and caused injury to the plaintiff. <u>Kothawala</u> v. <u>Whole Leaf, LLC</u>, 2023 IL App (1st) 210972, ¶¶ 1, 4, 6. The court reasoned that "given that a finding of relatedness requires something short of but-for causation under <u>Ford [Motor]</u>, it [was] difficult to see how anyone could plausibly argue that [the] plaintiff's claims [were] <u>not</u> at least 'related to'" the foreign corporation's "activities in" the forum State, <u>id</u>. at ¶ 54, based on the corporation's "direct shipment of battery packs to a distributor for resale," <u>id</u>. at ¶ 51, in the forum State.

Massachusetts over FCA US LLC for the plaintiffs' claims is consistent with these "two sets of values." See id. at 1025, citing World-Wide Volkswagen, 444 U.S. at 293.

As an initial matter, we emphasize that "a defendant who has purposefully directed [its] activities at" the forum "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. As discussed supra, and conceded by FCA US at the motion hearing, there is no question that FCA US "purposefully directed" its activities at Massachusetts. See id. Indeed, those contacts are significant and widespread. The first sale of the automobile in question also provides a causal connection between those activities and the automobile in question. See Ford Motor, 141 S. Ct. at 1026. That automobile also remained on the streets and highways of Massachusetts for eight years before it was sold to Doucet in a neighboring State.

Although the Court in Ford Motor, and perhaps Justice Alito in his concurrence in that case, may suggest that the connection to the litigation is stronger in the State in which the injury occurred (New Hampshire) than in the State in which the first sale occurred (Massachusetts), both are strong enough where the defendant does substantial business in the State at issue to satisfy the requirements of due process. See Ford Motor, 141 S. Ct. at 1030; id. at 1032 (Alito, J., concurring in the

judgment).  "When minimum contacts exist, due process demands no more than a reasonable forum."  O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 325 (3d Cir. 2007).  It does not demand "the best forum."[15]  Just because "principles of 'interstate federalism' support jurisdiction" over the plaintiffs' suit in the State in which Doucet was injured and lives does not mean these principles do not also support jurisdiction in the State of first sale when substantial business is done in that State. See Ford Motor, supra at 1029-1030.

As emphasized by Justice Gorsuch in his concurrence in Ford Motor, 141 S. Ct. at 1035, a State has a significant interest in protecting itself against the sale of defective products within its borders.  Accordingly, FCA US's purposefully directed activities within Massachusetts enhance the Commonwealth's interest in this litigation, where the allegedly defective automobile at issue remained in Massachusetts for eight years prior to its sale to a resident of a neighboring State, and

---

[15] Of additional consideration in this instance is the presence of two defendants:  Sudbay, which is "at home" only in Massachusetts, and FCA US, which is not at home in either Massachusetts or New Hampshire.  See Daimler AG v. Bauman, 571 U.S. 117, 134-139 (2014).  Although Massachusetts may exercise its general personal jurisdictional powers over Sudbay, see id., the plaintiffs would have to demonstrate that Sudbay has the minimal contacts related to this suit in New Hampshire to bring this suit against it there, see Ford Motor, 141 S. Ct. at 1024. Massachusetts, therefore, provides an efficient forum for the resolution of this case.  World-Wide Volkswagen, 444 U.S. at 292 (discussing importance of "efficient" forum).

where there may be other defective vehicles within our borders, by virtue of FCA US's ongoing contacts. Finally, there is no issue of the plaintiffs bringing a suit in a State to which their claims have no connection as a means of forum shopping, as there was in Bristol-Myers. See Ford Motor, supra at 1031; Bristol-Myers, 582 U.S. at 265-266. The plaintiffs originally filed their suit in New Hampshire, the State of residence and injury, and only brought this suit in the State of first sale after the defendants argued, and the Federal District Court in New Hampshire concluded, prior to the Ford Motor decision, that jurisdiction did not lie in the State in which the injury occurred. As the defendants are now arguing the exact opposite position, and the plaintiffs have been bounced from court to court for years, the values of "fair play and substantial justice," as well as interstate federalism, clearly now support jurisdiction in Massachusetts. See Ford Motor, 141 S. Ct. at 1024, 1030, quoting Int'l Shoe, 326 U.S. at 316; Burger King, 471 U.S. at 476.

3. Conclusion. For the foregoing reasons, we conclude that personal jurisdiction exists in Massachusetts over FCA US for these claims, pursuant to both the Commonwealth's long-arm statute, G. L. c. 223A, § 3, and the due process clause of the Fourteenth Amendment. We therefore vacate the judgment

dismissing FCA US as a party to the case and remand for further proceedings consistent with this opinion.

So ordered.